**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Lee PRESLEY, Defendant–
Appellant.**

No. 94–5477.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1995.

Decided April 13, 1995.

**ARGUED:** Charles Randall Lowe, Tate, Lowe & Rowlett, P.C., Abingdon, VA, for appellant. Steven Randall Ramseyer, Asst. U.S. Atty., Abingdon, VA, for appellee. **ON BRIEF:** Robert P. Crouch, Jr., U.S. Atty., Abingdon, VA, for appellee.

Before ERVIN, Chief Judge,
MURNAGHAN, Circuit Judge, and
PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge
MURNAGHAN wrote the opinion, in which
Chief Judge ERVIN and Senior Judge
PHILLIPS joined.

## OPINION

MURNAGHAN, Circuit Judge:

Defendant Donald Lee Presley was indict-
ed and denied release on bond pending trial
on the grounds of dangerousness to the com-
munity. Presley pled guilty to possession of
a total of 79 firearms, in or affecting inter-
state commerce, after having been convicted
of a crime punishable by imprisonment for a
term exceeding one year. Because Presley
had three prior violent felony convictions, his
sentence was enhanced to the mandatory
minimum term of fifteen years under the
Armed Career Criminal Act ("ACCA").
Presley unsuccessfully sought return of fifty-
one of the firearms in care of his representa-
tive.

Presley has challenged his pre-trial deten-
tion as unwarranted, his sentence under
ACCA as unconstitutional and as unsupport-
ed by the facts, and the denial of his request
for return of the firearms as without a legal
basis. However, we find no error, and thus
we affirm.

On November 6, 1972, Presley was convict-
ed in state court of shooting into an occupied
dwelling and of breaking and entering with
intent to commit assault. He received a one-
year sentence and a six-year sentence, re-
spectively, for these crimes.

On February 7, 1982, Presley was convict-
ed in state court of robbery. It appears that
Presley was an accomplice in that crime, as
he was in the getaway car. He received a
fifteen-year suspended sentence.

On February 28, 1982, Presley was convict-
ed in a state court proceeding of robbery in
the second degree. Presley was acquitted of
a second charge, use of a firearm in the
commission of a felony, in the same proceed-
ing. He was sentenced to an imprisonment
term of fifteen years, and was later released
on parole.

On February 22, 1993, Presley entered a
shopping center mall in Cedar Bluff, Virgi-
nia, and discussed the purchase of a number
of handguns with an employee. Two days
later, Presley, accompanied by Ted Allen
Kennedy, provided the owner of the store
with a list of the type and number of fire-
arms to be ordered. Presley later returned
to the store and made a down-payment of
approximately $1500. On March 1, 1993,
Kennedy and Presley acquired twenty-seven
handguns from the store. Kennedy filled out
the firearms forms and Presley paid for the
weapons. Presley and Kennedy left the
store with the firearms. Kennedy took the
twenty-seven firearms to Presley's trailer
and left them there. One of the guns was
later recovered from an armed career crimi-
nal in Michigan. The whereabouts of the
remaining guns are unknown.

On March 4, 1993, Presley, accompanied
by Kennedy, ordered fifty-one semi-automat-
ic handguns from the owner of the Silver
Spur Supply Company. On March 12, 1993,
Presley and Kennedy returned to the store
and purchased the fifty-one guns. Presley
paid just over $3000 for the guns, and Ken-
nedy filled out the paperwork for them.
Presley and Kennedy left the store with the
guns and were arrested by the Virginia State
Police. Another firearm was found in Pres-
ley's car. The State Police took possession
of the fifty-two firearms.

On November 9, 1993, Presley was named
as a defendant in a six-count indictment re-
turned by a federal grand jury sitting in
Abingdon, Virginia. In count one, Presley
was charged with possessing twenty-seven
firearms, in or affecting interstate commerce,
on March 1, 1993, after having been convict-
ed of a crime punishable by a term of impris-
onment exceeding one year. In count two,
Presley was charged with possessing fifty-
two firearms, in or affecting interstate com-
merce, on March 12, 1993, after having been
convicted of a crime punishable by a term of
imprisonment exceeding one year. Presley
was arrested on these charges on November
10, 1993, and was brought before a United
States Magistrate Judge. The magistrate

ordered Presley detained pending trial. Presley filed a motion to amend the magistrate's detention order. After a hearing, the district court denied the motion on the grounds that Presley would pose a danger to the community.

On April 7, 1994, pursuant to a plea agreement, Presley entered a plea of guilty to counts one and two of the indictment. On June 15, 1994, Presley filed a motion for the return of the fifty-one guns that were purchased from the Silver Spur Company. On June 16, 1994, Presley was sentenced as an Armed Career Criminal to 180 months imprisonment, and fined $3,400 with a $100 special assessment fee. Presley's motion for return of property was denied, and the firearms were ordered forfeited. On June 21, 1994, Presley filed the instant appeal.

## I. *The Constitutionality of ACCA.*

ACCA, codified at Section 924(e) of Title 18, United States Code, provides as follows:

> In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....
>
> ....
>
> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

Section 922(g) of Title 18, United States Code, provides:

> It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ...
>
> ....

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Presley has challenged ACCA as violative of the following dictates of the United States Constitution: the Commerce Clause, the Equal Protection Clause, the Due Process Clause, the Double Jeopardy Clause, the "Ex Post Facto" Clause, and the Eighth Amendment. We review the constitutionality of a statute *de novo*, but find persuasive the reasoning of the several courts which already have rejected similar challenges.

To discover whether a statute is within Congress' authority to legislate under the Commerce Clause, the question we must ask is merely whether Congress could reasonably find that the class of regulated activity affects interstate commerce. *Perez v. United States*, 402 U.S. 146, 150–54, 91 S.Ct. 1357, 1359–62, 28 L.Ed.2d 686 (1971). The federal statute criminalizing the possession of a firearm by a felon does not violate the Commerce Clause because sufficient nexus exists between the harm of firearms and interstate concerns. *See Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (minimal nexus is all that is necessary to meet interstate commerce requirement for conviction under the predecessor to current felon-in-possession statute). A violation of ACCA is not a separate offense, but rather provides a sentence enhancement which is imposed, when the defendant has committed three predicate violent felonies, for the conviction of the substantive offense of possession by a felon of a firearm. *United States v. Blannon*, 836 F.2d 843, 844–45 (4th Cir.), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). ACCA, as the basis for enhancement of a felon in possession sentence, has the same nexus to interstate commerce concerns as does the underlying possession offense, and thus ACCA is likewise

within Congress' authority to legislate under the Commerce Clause.*

■ When a statute makes an irrational classification, unrelated to a valid government purpose, it may violate the Equal Protection Clause of the Constitution. *See, e.g., McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). ACCA, however, is rationally related to a valid purpose of criminal law—incapacitation—and therefore does not violate the Equal Protection Clause of the Constitution. We find the following analysis by the Third Circuit persuasive:

> We cannot agree that the special treatment of felons with three [predicate felony] convictions is not rationally related to a valid state purpose. Congress enacted the Armed Career Criminal provision for the purpose of incapacitating particular repeat offenders, who it found were responsible for a large proportion of crimes involving theft and violence.
>
> . . . .
>
> [W]e are not willing to dispute Congress' findings that . . . punishing firearm possession by repeat [offenders] is an effective means of furthering the congressional objectives.

*United States v. Hawkins,* 811 F.2d 210, 216–17 (3d Cir.) (interpreting 18 U.S.C.App. § 1202, predecessor to ACCA), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

■ When a sentence enhancement provision is "so vague that it grants undue discretion to law enforcement officials," *United States v. Sorenson,* 914 F.2d 173, 175 (9th Cir.1990), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1076 (1991), it may be void for vagueness under the Due Process Clause. We agree with the Ninth Circuit that "[t]he factors for sentence enhancement under 18 U.S.C. § 924(e)(1) are quite specific," *id.,* however, and thus ACCA is not void for vagueness.

■ As explained by the Eighth Circuit in response to a challenge to ACCA under the Double Jeopardy Clause,

> The double jeopardy clause only protects against multiple punishments for the same offense. [The defendant's violent felony] convictions and the federal conviction for possession of a firearm by a felon resulted from charges brought . . . for conduct arising out of unrelated incidents. The double jeopardy clause has no relevance to [the defendant's] enhanced federal sentence.

*United States v. Conner,* 886 F.2d 984, 985 (8th Cir.1989) (citing *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976)), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1156, 107 L.Ed.2d 1060 (1990). We join the Eighth Circuit in finding that ACCA does not violate the Double Jeopardy Clause.

■ ACCA's use of prior felony convictions as predicates, even though such prior convictions were entered before the effective date of ACCA, does not violate the constitutional prohibition against "Ex Post Facto" laws. As we explained in *United States v. Etheridge,* "[the "Ex Post Facto"] clause prohibits any statute 'which makes more burdensome the punishment of a crime, after its commission.' The date of the present offense is determinative. . . ." 932 F.2d 318, 323 (4th Cir.) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925)), *cert. denied,* 502 U.S. 917, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991). Because Presley's present offense was committed in 1993, it, like the conviction in *Etheridge,* was "well after 1984, the year in which 18 U.S.C. 924(e)(1) was enacted in its present form," *id.* Thus the application of ACCA to Presley's conviction does not offend the Ex Post Facto Clause.

■ As we have held before, a fifteen-year sentence under ACCA is neither disproportionate to the offense nor cruel and unusual punishment, and thus does not violate the Eighth Amendment. *See, e.g., Etheridge,* 932 F.2d at 323; *United States v. Crittendon,* 883 F.2d 326, 331 (4th Cir.1989).

In light of the foregoing, the district court did not err in finding ACCA constitutional.

---

* When Presley pled guilty to being a felon in possession, he admitted all of the elements of that offense, including "affecting interstate commerce," and thus the interstate commerce nexus has been shown in Presley's case.

## II. The Definition of "Violent Felony" under ACCA.

Presley has claimed that his state robbery convictions should not be considered "violent felonies" for the purposes of ACCA. Presley has stated that because he was named as an accessory in his February 7, 1982 robbery conviction, with no evidence that he personally committed violence or threatened to commit violence, his conviction was not for a "violent felony." He has asserted that because his February 28, 1982 conviction was for robbery as a principal in the second degree and he was acquitted of use of a firearm in commission of a felony, that crime also should not be considered a "violent felony."

■■■■ However, as stated above, ACCA defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year ... that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e). There is no requirement that the defendant personally use force or threaten the use of force; it is enough that the crime of which the defendant was convicted has as an element the use or threatened use of force. *See Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990) ("[Section 924(e)] generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."); *see also United States v. Groce,* 999 F.2d 1189 (7th Cir.1993) (holding that conviction of aiding and abetting a predicate felony is a predicate felony conviction for purposes of ACCA because aider and abettor is treated the same as principal for criminal punishment purposes); *United States v. Alvarez,* 972 F.2d 1000, 1006 (9th Cir.1992) (holding that conviction for unarmed robbery is considered violent felony for purposes of sentence enhancement under 18 U.S.C. § 924(e)), *cert. denied,* — U.S. ——, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993).

■■■ The Virginia statute under which Presley was convicted provides that the crime of robbery is punishable by imprisonment for a term greater than one year. Va. Code Ann. § 18.2–58. The Commonwealth of Virginia has adopted the common law definition of robbery, and as such robbery is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Hoke v. Commonwealth,* 237 Va. 303, 310, 377 S.E.2d 595, 599, *cert. denied,* 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989); *Mason v. Commonwealth,* 200 Va. 253, 254, 105 S.E.2d 149, 150 (1958).

As Presley was convicted of robbery in Virginia, the requirement that the crime be punishable by a term of imprisonment greater than one year is met. We must assume that all of the elements of robbery in Virginia were met, including "violence or intimidation." Violence is the use of force. Intimidation is the threat of the use of force. Thus, because robbery in Virginia has as an element the use or threatened use of force, Presley's robbery convictions were properly used as predicates under ACCA.

## III. The Age of Prior Felonies under ACCA.

■■■■ Presley has contended that his 1973 convictions for shooting into an occupied dwelling and for breaking and entering with the intent to commit an assault should not be counted as a predicate conviction for purposes of ACCA. The district court properly counted them as one predicate felony conviction rather than two because they were part of a single criminal episode rather than multiple episodes distinct in time. *See United States v. Blackwood,* 913 F.2d 139, 146 (4th Cir.1990). Presley has argued that the convictions are "stale," and because they would not be counted in criminal history under the Sentencing Guidelines, *see* U.S.S.G. § 4A1.2(e)(3), they should not be counted under ACCA.

There is no temporal restriction on prior felonies for the purposes of ACCA. *See, e.g., United States v. Daniels,* 3 F.3d 25, 28 (1st Cir.1993); *Alvarez,* 972 F.2d at 1006; *United States v. Blankenship,* 923 F.2d 1110, 1118 (5th Cir.), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991). Therefore, the district court properly counted the

1973 convictions as one of Presley's three predicate offenses under ACCA.

## IV. *Return of the Firearms.*

 The Virginia State Police took into possession fifty-two firearms—fifty-one of which Presley had just paid for at the Silver Spur (his codefendant had filled out paperwork for them), and one of which was in Presley's car. Presley has complained that the federal government never moved for forfeiture, and that therefore the district court's order denying Presley's request for a return of fifty-one of the firearms, and instead forfeiting these firearms *sua sponte*, should be reversed. Presley does not seek to possess the firearms himself—as a felon in prison, he cannot receive firearms—but instead requests that the United States give the firearms to his representative, who can lawfully receive them.

As a practical matter, however, Presley's request is flawed. Regardless of whether Presley has any ownership rights in the firearms, the United States cannot return them because the United States does not possess them. The firearms were seized by the State Police of the Commonwealth of Virginia, and there is no evidence that they have been given to the federal government. In the absence of any motion for forfeiture, the district judge's order of forfeiture may have been premature; however, any error was harmless since the federal government, not having the guns, could not return them.

## V. *Appealability of Detention Order.*

 Prior to trial, the district court denied Presley's motion to alter or amend the magistrate judge's order detaining Presley pending trial. Presley had requested release on bail pending trial. As Presley did not file a motion in the district court to extend time, and more than ten days passed between the entry of the district court's order and Presley's notice of appeal, the appeal of the order was untimely, and we may not review the issue now.

Furthermore, on the merits, the district court was well within the confines of the Bail Reform Act, 18 U.S.C. § 3142, in denying bail. Detention is permitted where the maximum sentence is life imprisonment, and dangerousness to the community or probability of flight are shown. 18 U.S.C. § 3142(f)(1)(B); *United States v. Ploof,* 851 F.2d 7, 10 (1st Cir.1988). Here, dangerousness to the community was sufficiently shown, and under ACCA, the crimes here are offenses for which the maximum sentence is life imprisonment, *see* 18 U.S.C. 924(e) (defining minimum sentence as 15 years and not stating a maximum sentence); *Blannon,* 836 F.2d at 845 ("The [ACCA] imposes no upper limit. By implication, the maximum penalty under the ACCA is life imprisonment.").

Accordingly, the judgment is

*AFFIRMED..*