**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

No. 14-4871

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMES LARRY MCNEAL,

Defendant – Appellant.

───────────

No. 14-4872

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ALPHONSO STODDARD,

Defendant – Appellant.

───────────

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis III, Senior District Judge. (1:14-cr-00076-TSE-1; 1:14-cr-00076-TSE-3)

───────────

Argued: December 9, 2015          Decided: March 28, 2016

───────────

Before KING, SHEDD, and THACKER, Circuit Judges.

───────────

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Shedd and Judge Thacker joined.

---

**ARGUED**: Joseph John McCarthy, DELANEY, MCCARTHY & COLTON, P.C., Alexandria, Virginia; Maureen Leigh White, Richmond, Virginia, for Appellants. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF**: Dana J. Boente, United States Attorney, Jennifer A. Clarke, Special Assistant United States Attorney, Christopher Catizone, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

KING, Circuit Judge:

Defendants James Larry McNeal and Alphonso Stoddard were convicted by a jury and sentenced in the Eastern District of Virginia for conspiracy, armed bank robberies, and brandishing firearms during crimes of violence. On appeal, McNeal and Stoddard jointly challenge the sufficiency of the evidence supporting their convictions on the brandishing offenses. Separately, McNeal pursues three other contentions, challenging the adequacy of proof with respect to his conspiracy conviction, the denial of his motions to suppress, and certain evidentiary rulings. Finally, in supplemental submissions, McNeal and Stoddard contend that the federal offense of armed bank robbery is not a "crime of violence" in the context of the brandishing offenses. As explained below, we reject the various contentions of error and affirm.

I.

On February 27, 2014, the federal grand jury in Alexandria, Virginia, returned a seven-count indictment against McNeal, Stoddard, and a third man, James Link. Count One charged conspiracy under 18 U.S.C. § 371, alleging that the defendants had conspired "to commit an offense against the United States, namely armed robbery of a bank, in violation of [18 U.S.C.

3

§ 2113(a) and (d)]." See J.A. 50.[1] Counts Two, Four, and Six charged the defendants with substantive armed bank robbery offenses, in contravention of § 2113(a) and (d). Counts Three, Five, and Seven charged them with brandishing firearms during crimes of violence — the armed bank robberies charged in Counts Two, Four, and Six — in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Counts Two and Three arose from the October 30, 2013 robbery of a Bank of Georgetown branch in Vienna, Virginia (the "Bank of Georgetown robbery"). Counts Four and Five arose from the November 25, 2013 robbery of a Wells Fargo branch on North Glebe Road in Arlington, Virginia (the "Glebe Road robbery"). Finally, Counts Six and Seven arose from a robbery of a Wells Fargo branch on South George Mason Drive in Arlington on New Year's Eve in 2013 (the "New Year's Eve robbery").[2]

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2] Prior to trial, Link entered into a plea agreement with the government, pursuant to which he pleaded guilty to Counts Five and Seven in exchange for his cooperation against McNeal and Stoddard. Link thereafter refused, however, to testify against his coconspirators. The trial court found Link in breach of the plea agreement and sentenced him to thirty-five years in prison. Link appealed the judgment, and we affirmed. See United States v. Link, 606 F. App'x 80 (4th Cir. 2015).

4

A.

On December 30, 2013 — the day before the New Year's Eve robbery — FBI agents applied in the District of Maryland for a warrant authorizing them to install a tracking device on a 2004 Ford Taurus (the "tracking warrant"). The supporting affidavit recounted the details of four recent bank robberies in the Washington, D.C. area — the Bank of Georgetown and Glebe Road robberies, plus the October 29, 2013 attempted robbery of a Wells Fargo branch in Rockville, Maryland (the "Rockville robbery attempt"), and the December 10, 2013 robbery of a TD Bank in Washington.

The tracking warrant affidavit also related that a confidential informant contacted the authorities on December 12, 2013. The informant advised that an individual in a surveillance photo from one of the robberies resembled McNeal. The informant added that he had overheard McNeal and two other men discuss their involvement in bank robberies, describing how they cased banks (i.e., scouted them out) before robbing them. The affidavit advised that all three men had been convicted of bank robbery offenses that were similar to those then under investigation. The informant identified the getaway car the trio had used in the robberies as a beige 2004 Ford Taurus, bearing Maryland handicap license plate 20881HV. The Taurus,

5

agents learned, was registered to McNeal's mother at a residential address in Hyattsville, Maryland.

According to the affidavit, McNeal drove the Taurus from the Hyattsville residence to Arlington on December 27, 2013, picking up two other men en route. In Arlington, FBI agents watched as the car parked in view of a Bank of America branch at the intersection of Columbia Pike and South Glebe Road, where it remained for a short time. The Taurus then drove within view of the Wells Fargo branch on South George Mason Drive, parked nearby for about ten minutes, and left.

At about 4:00 p.m. on December 30, 2013, a federal magistrate judge in Greenbelt, Maryland, issued the tracking warrant. Pursuant thereto, the FBI agents installed a GPS tracking device on the Taurus that evening.

The very next day, McNeal, now under close surveillance by the FBI and local authorities, drove the Taurus to Arlington with Stoddard and Link to commit the New Year's Eve robbery. FBI agents and Arlington police officers watched that afternoon as Stoddard and Link exited the Wells Fargo branch on South George Mason Drive, carrying a black trash bag overflowing with stolen money. Immediately after the thieves entered the Taurus, agents blocked their getaway and arrested all three suspects. The arresting agents then seized a loaded Glock handgun from Link and the trash bag full of cash from the vehicle.

Later that afternoon — after McNeal, Stoddard, and Link had committed the New Year's Eve robbery — FBI agents sought a warrant to search McNeal's residence in Hyattsville for, inter alia, evidence of the bank robberies (the "search warrant"). The supporting affidavit echoed the facts underlying the tracking warrant application, but also described the New Year's Eve robbery and the arrests of the three suspects earlier that day. At 3:45 p.m., the magistrate judge in Greenbelt issued the search warrant for McNeal's residence. During their search of the residence that evening, FBI agents discovered a locked box under a bed in the only bedroom that contained men's clothing and toiletries. After prying the box open, the agents seized a silver revolver and $300 in cash.

Prior to trial, McNeal sought to suppress the evidence seized by the FBI in executing the two warrants. On April 2, 2014, McNeal moved to suppress the silver revolver seized from his residence, contending that the FBI agents had exceeded the scope of the search warrant by opening the locked box. Thereafter, on May 8, 2014, McNeal filed a motion to suppress all evidence seized from his residence, and on May 28, 2014, he moved to suppress "the tracking warrant and all evidence that flowed therefrom," see J.A. 148. In support of those motions, McNeal maintained that the search warrant and the tracking

warrant were not supported by probable cause.  On June 6, 2014, the district court denied the suppression motions.

B.

1.

The evidence at trial established that, on October 29, 2013, Link and Stoddard engaged in the Rockville robbery attempt.[3]  Upon entering the Wells Fargo branch, Link brandished a handgun and yelled for everyone to get on the floor, while Stoddard vaulted the teller counter.  Link also barked instructions at Stoddard during the course of the robbery attempt.  At one point, Link fired his handgun into the ceiling. Shortly thereafter, the two men fled the bank empty handed.

Undeterred, Link and Stoddard committed the Bank of Georgetown robbery the very next day.  A teller explained how Stoddard covered his face with a ski mask, while Link wore a hoodie and wielded a silver revolver.  Stoddard jumped over the counter, a black plastic bag in hand, and demanded that the teller give him money.  When the teller opened the cash drawer, Stoddard started grabbing the cash and stuffing it in the trash

---

[3] In light of the jury's guilty verdicts, we recite the facts underlying these prosecutions in the light most favorable to the government.  See United States v. Perry, 757 F.3d 166, 175 (4th Cir. 2014).  Prosecutors presented evidence from seventeen witnesses during the three-day trial.  McNeal and Stoddard did not testify or call witnesses.

8

bag.  Link, meanwhile, shouted instructions at Stoddard.  In the end, the robbers fled with approximately $3500 in cash.

Link and Stoddard struck again on November 25, 2013, this time committing the Glebe Road robbery.  Link again stood just inside the entrance, displayed a black handgun, and shouted at employees and customers to get on the floor.  Meanwhile, Stoddard jumped the counter and ransacked the cash drawers.  After a minute or so, Link started yelling at Stoddard, "Come on, Joe.  Come on, Joe.  We got to go."  See J.A. 504.  When an elderly woman walked into the bank, Link grabbed her and threw her to the floor.  Approximately two minutes after entering, Link and Stoddard left with about $19,000 in cash.

2.

In late December 2013, FBI agents and local police investigating the Rockville robbery attempt and the Bank of Georgetown and Glebe Road robberies conducted surveillance of the defendants.  On December 27, agents watched as McNeal departed his Hyattsville residence in the Taurus.  At about 1:57 p.m., the agents observed McNeal, Stoddard, and a third individual in the Taurus, which was parked facing the Bank of America branch at Columbia Pike and South Glebe Road in Arlington.  For about four minutes, the Taurus sat in the parking space, and no one entered or exited.  McNeal then drove the Taurus to South George Mason Drive in Arlington and parked

9

about 150 to 200 meters from the Wells Fargo branch.  The Taurus remained there for about seven minutes, again with no one entering or exiting.

Four days later, on December 31, 2013, McNeal drove from his Hyattsville residence to a strip mall on Columbia Pike in Arlington and picked up Link and Stoddard along the way.  After a brief stop at a McDonald's, the Taurus left the mall at about 12:35 p.m.  For more than a half hour, the Taurus meandered around Arlington, stopping intermittently.  Shortly after 1:00 p.m., the vehicle parked on South 8th Street, just east of South George Mason Drive — and directly in front of a vehicle occupied by an Arlington County police officer.  The officer watched Link and Stoddard exit the Taurus and walk toward the Wells Fargo branch they had cased a few days earlier.  As they approached the bank, Link and Stoddard donned the hoods of their coats, and one of them pulled up a handkerchief or scarf to cover his face.  Meanwhile, McNeal maneuvered the Taurus to a parking space on the northbound side of South George Mason Drive, about a block and a half from the Wells Fargo branch.

Link and Stoddard then entered the Wells Fargo branch, where Link drew a Glock handgun and told everyone to get on the floor.  In response, a customer fled out the front door and ran away, stumbling over a fence.  Inside the bank, Stoddard vaulted the counter, opened a cash drawer, and ordered a teller to open

10

another. The teller complied, and Stoddard helped himself to the money inside the drawers. Link soon grew impatient and urged Stoddard to hurry up, shouting, "Come on Joe," and, "We got to go." See J.A. 623.

After a couple of minutes, Link and Stoddard left the Wells Fargo branch and returned to the Taurus, walking briskly at first and then jogging as they got closer. Stoddard carried the black trash bag filled with nearly $48,000 in cash. Just as McNeal pulled out of the parking space, an FBI SWAT team truck blocked their escape, striking the side of the Taurus and pinning it against the curb. Link, McNeal, and Stoddard were then arrested without resistance.

At the arrest scene, the FBI agents seized the loaded semiautomatic Glock handgun, which was tucked into Link's waistband. From the Taurus, the agents recovered the black trash bag containing the money stolen during the New Year's Eve robbery. The firearm was introduced at trial, where two FBI agents — one a certified firearms instructor — identified it.

The prosecutors also introduced Stoddard's own statements about his criminal activity. First, during an interview with FBI agents, Stoddard admitted that he was a professional bank robber and that he had participated in the Rockville robbery

attempt and the Glebe Road robbery.[4]  Second, an inmate housed with Stoddard in an Alexandria jail testified that Stoddard had asserted, among other things, that he "robbed banks" and that McNeal was one of his "partners."  See J.A. 758.

Finally, the prosecutors introduced the silver revolver and cash seized from McNeal's Hyattsville residence.  McNeal objected on the ground that the prosecutors had not linked him to the residence, and thus any evidence seized therefrom was irrelevant.  The trial court, however, overruled McNeal's objection.  After the prosecutors proffered evidence — outside the presence of the jury — that McNeal had confirmed his residence in response to routine booking questions, McNeal stipulated that he lived at the Hyattsville residence.

## C.

The jury found Stoddard guilty on all seven counts.  It found McNeal guilty on three charges — the conspiracy offense in Count One and the two offenses in Counts Six and Seven arising from the New Year's Eve robbery.[5]

---

[4] Stoddard's post-arrest statement to the FBI regarding his participation in the earlier bank robberies was admitted against him only, and not against McNeal.

[5] The jury hung and a mistrial was declared as to McNeal on Counts Two through Five.  At the conclusion of McNeal's sentencing hearing in November 2014, the district court dismissed those charges against him.

12

McNeal and Stoddard thereafter filed motions for judgments of acquittal. McNeal contended, inter alia, that the government had failed to prove that he knew the purpose and goal of the conspiracy was to commit armed bank robbery, a crime under 18 U.S.C. § 2113(d), as opposed to bank robbery, a lesser-included offense under § 2113(a). The district court denied the acquittal motions, ruling that "a rational trier of fact could find that the conspiracy was to commit armed bank robbery." See J.A. 1046.

On November 7, 2014, the district court sentenced Stoddard to life in prison and McNeal to 184 months. McNeal and Stoddard have timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's determinations of questions of law. See United States v. Beyle, 782 F.3d 159, 166 (4th Cir. 2015). We review evidentiary rulings made by a trial court for abuse of discretion. See United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir. 1990).

An issue pursued on appeal but not preserved in the lower court is reviewed for plain error only. See United States v. Olano, 507 U.S. 725, 732 (1993). To satisfy that standard, a defendant must show "(1) that an error was made; (2) that the

13

error was plain; and (3) that the error affected his substantial rights." United States v. Carthorne, 726 F.3d 503, 510 (4th Cir. 2013). Even if those three prongs are satisfied, we will correct a plain error only when necessary to prevent "a miscarriage of justice" or to ensure "the fairness, integrity or public reputation of judicial proceedings." United States v. Whitfield, 695 F.3d 288, 303 (4th Cir. 2012).

## III.

McNeal and Stoddard's opening brief on appeal presents four assignments of error. First, the pair challenges the sufficiency of the evidence on the brandishing offenses, arguing that the government failed to prove that the handguns used in the robberies were functional. Second, McNeal contends that the evidence was insufficient to support his conviction for conspiracy to commit armed bank robbery. In his third assignment of error, McNeal maintains that the trial court erred in denying his suppression motions. Finally, McNeal challenges the court's evidentiary rulings admitting the silver revolver and the cash seized from his Hyattsville residence. We address those contentions in turn.

### A.

McNeal and Stoddard challenge the sufficiency of the evidence supporting the brandishing offenses in Counts Three

14

(Stoddard), Five (Stoddard), and Seven (both McNeal and Stoddard). They contend that the prosecution failed to prove that the handguns brandished in the three robberies underlying those offenses were in fact firearms under federal law. We will disturb a guilty verdict only if the record fails to contain "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010). In conducting such an analysis, we view "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." United States v. Perry, 757 F.3d 166, 175 (4th Cir. 2014).

Pursuant to § 924(c)(1)(A)(ii) of Title 18, an accused who, in the course of committing a crime of violence, "uses or carries a firearm" is subject to an additional prison sentence "of not less than 7 years," if the firearm was "brandished" during and in relation to the crime. The term "firearm" is defined in § 921(a)(3) as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Invoking that definition, McNeal and Stoddard contend that the prosecution failed to present expert testimony that the firearms brandished during the three bank robberies charged in the indictment were capable of expelling a projectile. Such expert testimony is not necessary

15

to prove a § 924(c) offense, however, at least absent some indication that the firearm was a fake. See United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990). As we explained in Jones, the lay testimony of eyewitnesses that "a gun was used in the robbery" is a sufficient basis for the jury to find that a "firearm" was used in a bank robbery offense. Id.

In this trial, several eyewitnesses testified concerning the bank robberies in Counts Two, Four, and Six and confirmed that, in each bank, one of the robbers had displayed a handgun. Accordingly, McNeal and Stoddard's first contention provides no basis for overturning their convictions on the brandishing offenses.

### B.

McNeal separately contends that the evidence was insufficient to convict him of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371. Section 371 provides, in relevant part, that if "two or more persons conspire . . . to commit any offense against the United States . . . , and one or more of such persons do any act to effect the object of the conspiracy, each shall be" punished by up to five years in prison. To prove a § 371 conspiracy, the government must show "an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004). The

16

prosecutors must also show that the accused possessed "at least the degree of criminal intent necessary for the substantive offense itself." Ingram v. United States, 360 U.S. 672, 678 (1959).

McNeal maintains that, in order to prove the conspiracy alleged in Count One, the government had to show that he understood, at some point during the conspiracy, that Stoddard and Link intended to use a weapon to rob a bank. He further contends that the government failed to make any such showing at trial. The government responds that the trial evidence amply supported the jury's conclusion that McNeal knew he was entering into a conspiracy to commit armed bank robbery. In the alternative, the government maintains that we could "impose a conviction on the lesser-included charge of conspiracy to commit unarmed bank robbery." See Br. of Appellee 30.

We reject McNeal's contention of error because the evidence of McNeal's knowledge that a firearm would be used in the robberies was more than sufficient to support the guilty verdict on the conspiracy offense. On December 27, 2013, the FBI observed McNeal, Stoddard, and Link casing banks in Arlington, including the Wells Fargo branch on South George Mason Drive. On New Year's Eve, for about half an hour before they robbed that bank, McNeal, Stoddard, and Link drove in the vicinity of the very banks they had cased four days earlier. The jury was

17

entitled to find that the defendants were then putting the finishing touches on their plan to rob the Wells Fargo branch — a crime McNeal and his cronies had travelled to Virginia to commit. McNeal's active involvement in planning and carrying out the New Year's Eve robbery, in which a firearm was actually used, strongly supports the jury's finding that he knew a handgun would be used in the robbery. See United States v. Johnson, 444 F.3d 1026, 1029-30 (9th Cir. 2006).

The fact that McNeal knew a firearm would be used in the New Year's Eve robbery is also supported by other evidence. For example, Stoddard represented to his fellow jail inmate that McNeal was his partner in robbing banks.[6] Stoddard had also participated in the Rockville robbery attempt, the Glebe Road robbery, and the Bank of Georgetown robbery, each of which involved the use of a handgun. The jury was thus entitled to find that McNeal conspired with Stoddard and Link to commit the New Year's Eve robbery and that McNeal fully understood that a

---

[6] McNeal objected to the jail inmate's testimony that Stoddard said that he and McNeal robbed banks together, arguing that such testimony was inadmissible hearsay. The trial court overruled the objection, and McNeal does not challenge that ruling on appeal.

firearm would be used in the robbery.  Accordingly, we reject McNeal's challenge to his conspiracy conviction on Count One.[7]

## C.

McNeal next contends that the district court erroneously denied his motions to suppress the evidence seized pursuant to the tracking warrant and the search warrant.  McNeal's contention has two subparts:  first, that the tracking warrant affidavit failed to sufficiently link him to the Taurus; and second, that the search warrant affidavit did not sufficiently connect him to the Hyattsville residence.

In making a probable cause assessment, a magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . , there is a fair probability that contraband or evidence of a crime will be found."  See Illinois v. Gates, 462 U.S. 213, 238 (1983).  As a reviewing court, we are obliged to "accord great deference to the magistrate's assessment of the facts presented to him."  United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (internal quotation marks omitted).  Our inquiry is

---

[7] Even if the government had failed to prove that McNeal knew he was entering into a conspiracy to commit armed bank robbery, we would yet affirm the Count One judgment against him. McNeal indisputably entered into a conspiracy to commit bank robbery.  And, for purposes of punishment, there is no difference between a § 371 conspiracy to commit bank robbery and a § 371 conspiracy to commit armed bank robbery.

thus limited to whether there was a substantial basis for determining the existence of probable cause. See United States v. Montieth, 662 F.3d 660, 664 (4th Cir. 2011).

We must reject McNeal's contentions on the suppression issues. As the tracking warrant affidavit shows, the Taurus was registered to McNeal's mother, and McNeal had used it to case target banks in Arlington. Furthermore, an informant advised the FBI that McNeal had used the Taurus to rob banks. That information was corroborated by the FBI's surveillance of McNeal and the informant's knowledge of the amount of money stolen in the robberies. See United States v. Miller, 925 F.2d 695, 699 (4th Cir. 1991) (explaining that informant's tip corroborated by investigator's observations establishes probable cause). Thus, there was ample cause to believe that McNeal was using the Taurus to plan and commit bank robberies.

The search warrant affidavit connected McNeal to the Hyattsville residence and demonstrated probable cause to believe that evidence of the bank robberies would be located there. As the affidavit explained, McNeal was observed leaving the Hyattsville residence just before casing target banks on December 27, 2013. Likewise, FBI agents had seen McNeal leaving the Hyattsville residence four days later, immediately before he participated in the New Year's Eve robbery. And, of course, the Taurus was registered to McNeal's mother at that residence.

20

McNeal argues that the FBI agents should have done more to corroborate the facts in the affidavits. The Fourth Amendment, however, does not require investigators to exhaust every potential avenue of investigation before seeking and obtaining a warrant. See McKinney v. Richland Cty. Sheriff's Dep't, 431 F.3d 415, 418-19 (4th Cir. 2005) (explaining that an officer's failure to "conduct a more thorough investigation before seeking [an] arrest warrant does not negate" probable cause). Simply put, each warrant was supported by probable cause, and the district court properly denied McNeal's motions to suppress.

D.

Finally, McNeal challenges the trial court's ruling that the prosecution was entitled to introduce the silver revolver and the cash seized from his Hyattsville residence. McNeal maintains that the government failed to provide an adequate foundation for the admission of either the revolver or the cash, in that neither was sufficiently linked to him. McNeal, however, stipulated that the Hyattsville residence was his, and the FBI agents found and seized the silver revolver and the cash from the only bedroom containing male clothing and toiletries. Accordingly, the trial court did not abuse its discretion in admitting the evidence seized from McNeal's Hyattsville residence.

IV.

By way of supplemental submissions, McNeal and Stoddard argue that their convictions under 18 U.S.C. § 924(c) for brandishing a firearm during a crime of violence should be set aside because 18 U.S.C. § 2113(d) armed bank robbery is not a "crime of violence" as defined in § 924(c)(3). Whether an offense constitutes such a crime of violence is a question of law that we review de novo. See United States v. Adkins, 937 F.2d 947, 950 n.2 (4th Cir. 1991). Because the defendants failed to preserve in the trial court their contention that armed bank robbery is not a crime of violence, we may vacate the brandishing convictions only if McNeal and Stoddard satisfy plain error review. See United States v. Olano, 507 U.S. 725, 732 (1993).

A.

Under 18 U.S.C. § 924(c)(1)(A), a defendant who "uses or carries" a firearm "during and in relation to any crime of violence" faces a five-year mandatory minimum sentence, to run consecutively to any sentence for the underlying offense. See United States v. Johnson, 32 F.3d 82, 85 (4th Cir. 1994). If, during the commission of the crime of violence, "the firearm is brandished," the mandatory minimum sentence increases to seven years. See § 924(c)(1)(A)(ii). As defined in § 924(c)(3), the phrase "crime of violence" means a felony offense that either:

22

"(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." We have referred to subparagraph (A) of § 924(c)(3) as the "force clause" and to subparagraph (B) as the "residual clause." See, e.g., United States v. Fuertes, 805 F.3d 485, 498 (4th Cir. 2015). In determining whether an offense is a crime of violence under either clause, we utilize the categorical approach, which focuses solely on the elements of the offense, rather than on the facts of the case. See id.

McNeal and Stoddard contend that their convictions on Counts Three, Five, and Seven for brandishing a firearm during a crime of violence must be vacated. They maintain, inter alia, that armed bank robbery under § 2113(d) is not a crime of violence within the meaning of the § 924(c)(3) force clause because it does not have as an element the use, attempted use, or threatened use of physical force. The government counters that bank robbery in violation of § 2113(a), a lesser-included offense of § 2113(d) armed bank robbery, satisfies the force clause of § 924(c)(3) because it includes the element that property must be taken "by force and violence, or by

intimidation." As further explained below, we agree with the government.[8]

1.

The crimes of violence underlying McNeal's and Stoddard's brandishing convictions were the armed bank robberies charged in Counts Two, Four, and Six of the indictment. Armed bank robbery under § 2113(d) has four elements: (1) the defendant took, or attempted to take, money belonging to, or in the custody, care, or possession of, a bank, credit union, or saving and loan association; (2) the money was taken "by force and violence, or by intimidation"; (3) the deposits of the institution were federally insured; and (4) in committing or attempting to commit the offense, the defendant assaulted any person, or put in jeopardy the life of any person, by the use of a dangerous weapon or device. See United States v. Davis, 437 F.3d 989, 993 (10th Cir. 2006). The first three elements of armed bank

---

[8] McNeal and Stoddard also contend in their supplemental submissions that, in light of the Supreme Court's decision last year in Johnson v. United States — in which the Court invalidated as unconstitutionally vague the residual clause in the Armed Career Criminal Act, see 135 S. Ct. 2551, 2557 (2015) — § 924(c)(3)'s similar residual clause is also unconstitutionally vague. Because § 2113(a) bank robbery satisfies the § 924(c)(3) force clause, we do not consider whether Johnson renders the § 924(c)(3) residual clause unconstitutionally vague. See Fuertes, 805 F.3d at 499 n.5 (invoking principle of constitutional avoidance articulated in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–48 (1936) (Brandeis, J., concurring)).

robbery are drawn from § 2113(a) and define the lesser-included offense of bank robbery. The fourth element is drawn from § 2113(d). We focus on the second element: that the money was taken from the bank "by force and violence, or by intimidation." See § 2113(a).

In assessing whether bank robbery qualifies as a crime of violence under the § 924(c)(3) force clause, we do not write on a blank slate. Twenty-five years ago in Adkins, our esteemed former colleague Judge Hall explained that "armed bank robbery is unquestionably a crime of violence, because it 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" See 937 F.2d at 950 n.2 (quoting 18 U.S.C. § 924(c)(3)(A)). We also ruled decades ago that a § 2113(a) bank robbery is a crime of violence under the force clause of Guidelines section 4B1.2, which is nearly identical to the § 924(c)(3) force clause. See United States v. Davis, 915 F.2d 132, 133 (4th Cir. 1990); accord Johnson v. United States, 779 F.3d 125, 128-29 (2d Cir. 2015); United States v. Wright, 957 F.2d 520, 521 (8th Cir. 1992); United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1991);

United States v. Selfa, 918 F.2d 749, 751 (9th Cir. 1990); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989).[9]

Our sister circuits have uniformly ruled that other federal crimes involving takings "by force and violence, or by intimidation," have as an element the use, attempted use, or threatened use of physical force. Earlier this year, for example, the Eighth Circuit concluded that robbery in the special maritime and territorial jurisdiction of the United States under 18 U.S.C. § 2111 satisfied the similarly worded force clause in the Armed Career Criminal Act ("ACCA"), because it required a taking "by force and violence, or by intimidation." See United States v. Boman, 810 F.3d 534, 542-43 (8th Cir. 2016). The Second and Eleventh Circuits reached the same conclusion with respect to the carjacking statute, 18 U.S.C. § 2119. See United States v. Moore, 43 F.3d 568, 572-73 (11th Cir. 1994); United States v. Mohammed, 27 F.3d 815, 819 (2d Cir. 1994).

The logic of those decisions is straightforward. A taking "by force and violence" entails the use of physical force.

_____

[9] The term "crime of violence," and its cousin, the term "violent felony," are defined in various statutory provisions, including § 924(c), and in the Sentencing Guidelines, including section 4B1.2. In light of the striking similarities among those definitions, the court decisions interpreting one such definition are persuasive as to the meaning of the others. See United States v. Williams, 67 F.3d 527, 528 (4th Cir. 1995).

26

Likewise, a taking "by intimidation" involves the threat to use such force. See, e.g., Jones, 932 F.2d at 625 ("Intimidation means the threat of force."); Selfa, 918 F.2d at 751 (explaining that the intimidation element of § 2113(a) meets "the [Guidelines] section 4B1.2(1) requirement of a 'threatened use of physical force'"). As the Seventh Circuit explained in its Jones decision, "[t]here is no 'space' between 'bank robbery' and 'crime of violence'" because "violence in the broad sense that includes a merely threatened use of force is an element of every bank robbery." See 932 F.2d at 625.

In United States v. Presley, in 1995, we recognized the equivalence between "intimidation" and the "threatened use of physical force," holding that a Virginia robbery offense satisfied the ACCA force clause. See 52 F.3d 64, 69 (4th Cir. 1995). As we explained, Virginia had defined robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Id. Reasoning that "[v]iolence is the use of force," and "[i]ntimidation is the threat of the use of force," we concluded that "robbery in Virginia has as an element the use or threatened use of force." Id. Of course, our Presley decision addressed a state crime, rather than a federal offense, and a State is entitled to define its crimes as it sees fit. In this case, however, McNeal and Stoddard have

27

presented no sound basis for concluding that the "intimidation" element of Virginia robbery is any narrower or broader than the "intimidation" element of federal bank robbery.

Put succinctly, the reasoning of Jones, Selfa, and Presley is persuasive. Bank robbery under § 2113(a), "by force and violence," requires the use of physical force. Bank robbery under § 2113(a), "by intimidation," requires the threatened use of physical force. Either of those alternatives includes an element that is "the use, attempted use, or threatened use of physical force," and thus bank robbery under § 2113(a) constitutes a crime of violence under the force clause of § 924(c)(3).

2.

McNeal and Stoddard contend that recent decisions of the Supreme Court and this Court have changed the legal landscape and compel us to conclude that § 2113(a) bank robbery is not a crime of violence within the meaning of § 924(c)(3). In particular, they rely on the Supreme Court's 2010 decision in Johnson v. United States, 559 U.S. 133 (2010), the Court's 2004 decision in Leocal v. Ashcroft, 543 U.S. 1 (2004), and our 2012 decision in United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012).

a.

In <u>Johnson</u>, the Supreme Court ruled that a Florida simple battery was not a crime of violence under the ACCA force clause. <u>See</u> 559 U.S. at 136-37. The Florida statute provided that a person could be convicted of battery upon proof that he actually and intentionally touched another person against the victim's will. The government argued, and the lower courts agreed, that any unwanted intentional touching qualified as "physical force" under the ACCA force clause. <u>Id.</u> at 137. The Supreme Court rejected that reading, however, ruling instead that "physical force," as used in the ACCA force clause, "means <u>violent</u> force — that is, force capable of causing physical pain or injury to another person." <u>Id.</u> at 140.

McNeal and Stoddard assert, without further explanation, that <u>Johnson</u> rendered unpersuasive the earlier authorities concluding that § 2113(a) bank robbery is a crime of violence. <u>Johnson</u>, however, is entirely consistent with those authorities. Bank robbery under § 2113(a) requires either "force and violence" or "intimidation." A combination of force and violence qualifies as violent force, and the defendants do not argue to the contrary. Meanwhile, the term "intimidation" in § 2113(a) simply means "the threat of the use of force." <u>See</u> <u>Presley</u>, 52 F.3d at 69. As the Seventh Circuit explained in <u>United States v. Smith</u>, "intimidation . . . must constitute a

29

threat," and the defendant's "conduct will be deemed to be a threat if it was calculated to create the impression that any resistance by the teller would be met with physical force." See 131 F.3d 685, 688 (7th Cir. 1997). Moreover, to qualify as intimidation, the degree of "force" threatened must be violent force — that is, force capable of causing physical pain or injury. See United States v. Wagstaff, 865 F.2d 626, 627 (4th Cir. 1989) (emphasizing that intimidation occurs "when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts").

b.

Although Johnson addressed the definition of "physical force" under the ACCA force clause, the Supreme Court's Leocal decision, six years earlier, explained what it means to "use" physical force. In Leocal, the Court ruled that a Florida offense of driving under the influence and causing serious injury was not a crime of violence under the force clause of 18 U.S.C. § 16. See 543 U.S. at 9-10. The Court explained that the "key phrase in § 16(a) — 'the use . . . of physical force against the person or property of another' — most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Id. at 9 (alteration in original). Because the Florida Supreme Court had interpreted the DUI statute as lacking a mens rea requirement, the DUI offense could

30

not qualify as a crime of violence under the force clause. Id. at 7-8, 10. Although Leocal reserved the question of whether a reckless application of force could qualify as a "use" of force, we answered that question two years later by ruling that recklessness was not enough. See Garcia v. Gonzalez, 455 F.3d 465, 468-69 (4th Cir. 2006).

McNeal and Stoddard insist that bank robbery by "intimidation" is not a crime of violence under the force clause of § 924(c)(3) because, in their view, bank robbery can be committed by recklessly engaging in intimidation. To support that interpretation, they point to our 1996 decision in United States v. Woodrup, 86 F.3d 359 (4th Cir. 1996). Woodrup was convicted of § 2113(a) bank robbery on evidence that he "entered the bank, looked directly at [a] teller . . . , walked very quickly across the lobby to the teller position, reached across the counter 'as if . . . trying to grab' the teller, and vaulted over the counter headfirst, causing her to back away, screaming." Id. at 363 (second alteration in original). Woodrup was unarmed, did not use a note, and did not make an oral demand for money. After he was arrested, Woodrup told an FBI agent that he was "glad that the teller didn't have a heart attack and die." Id. at 364.

On appeal, Woodrup challenged his conviction on the ground that the prosecution had not proven that he intended to

31

intimidate the teller. See Woodrup, 86 F.3d at 363. We declined to read an intent requirement into § 2113(a), observing that "nothing in the statute even remotely suggests that the defendant must have intended to intimidate." Id. at 364. Instead, we explained that "the intimidation element of § 2113(a) is satisfied if an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts, whether or not the defendant actually intended the intimidation." Id. (internal quotation marks omitted).

McNeal and Stoddard urge that our Woodrup decision — in particular, its rejection of an "intent" requirement and reference to the "reasonable teller" — means that bank robbery can be committed by recklessly engaging in intimidation. A fair reading of Woodrup does not compel that interpretation. First, Woodrup presented the issue of whether bank robbery by intimidation requires a specific intent to intimidate. Plainly, Woodrup knew his conduct was intimidating, in light of his admission to the FBI after his arrest that he was glad that the teller did not suffer a heart attack. Thus, we had no occasion to consider whether bank robbery requires general intent (i.e., knowledge) with respect to intimidation. And, second, Woodrup's definition of intimidation by reference to a reasonable person says nothing about whether the defendant must know that his conduct fits that definition.

32

In 2000, however, the Supreme Court ruled in United States v. Carter that bank robbery under § 2113(a) requires "proof of general intent — that is, that the defendant possessed knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or intimidation)." See 530 U.S. 255, 268 (2000). Put differently, the prosecution must show that the defendant knew "the facts that ma[de] his conduct fit the definition of the offense." See United States v. Elonis, 135 S. Ct. 2001, 2009 (2015). Thus, to secure a conviction of bank robbery "by intimidation," the government must prove not only that the accused knowingly took property, but also that he knew that his actions were objectively intimidating. Bank robbery under § 2113(a) therefore satisfies the criterion we articulated in Garcia in 2006 that, to qualify as a crime of violence, an offense must require either specific intent or knowledge with respect to the use, threatened use, or attempted use of physical force.

c.

In our Torres-Miguel decision in 2012, we further examined what it means for a crime to have as an element the "use" of physical force. We concluded that a California statute, which prohibited willfully threatening to commit a crime that would result in death or great bodily injury, failed to qualify as a crime of violence under Guidelines section 2L1.2. See Torres-

33

Miguel, 701 F.3d at 166. Our ruling rested on the distinction between using physical force and causing bodily injury. We reasoned that "a crime may result in death or serious injury without involving use of physical force." Id. at 168. Invoking an example offered by the Fifth Circuit in addressing the same question, we observed that threatening to poison someone could contravene § 422(a) without involving the use or threatened use of force. Id. at 168-69.[10]

Relying on the distinction we drew in Torres-Miguel between using physical force and causing bodily injury, McNeal and Stoddard contend that "intimidation," as we defined it in Woodrup — words or conduct from which "an ordinary person . . . reasonably could infer a threat of bodily harm," see 86 F.3d at 363 — is not the same as a threat to use physical force. McNeal and Stoddard suggest that a person can commit bank robbery by means other than the use or threatened use of violent physical

---

[10] The government suggests that the Supreme Court's 2014 decision in United States v. Castleman, 134 S. Ct. 1405 (2014), has abrogated the distinction that we recognized in Torres-Miguel between the use of force and the causation of injury. That strikes us as a dubious proposition. Writing for the Castleman majority, Justice Sotomayor expressly reserved the question of whether causation of bodily injury "necessarily entails violent force." See 134 S. Ct. at 1413; see also id. at 1414 (emphasizing that Court was not deciding question of whether or not causation of bodily injury "necessitate[s] violent force, under Johnson's definition of that phrase").

force, such as "by threatening to poison or expose the teller to a hazardous gas." See Supp. Reply Br. of Appellants 9.

We decline to read Woodrup as conclusively interpreting "intimidation" to encompass threats to cause bodily injury other than by violent physical force. Plainly, the threat that the teller reasonably perceived from Woodrup's actions was a threat of bodily harm caused by violent physical force — not by something like poisoning. See Torres-Miguel, 701 F.3d at 168-69. The distinction we drew in Torres-Miguel between using force and causing injury was thus irrelevant to our decision in Woodrup.

Furthermore, the Woodrup panel had no reason to dwell on whether to define "intimidation" in terms of fear of injury or in terms of a threatened use of force. That distinction is irrelevant in the vast majority of bank robbery cases, as it will be the rare bank robber who commits that offense with poison. Indeed, McNeal and Stoddard have not identified a single bank robbery prosecution where the victim feared bodily harm from something other than violent physical force. We therefore decline to read Woodrup to mean that a bank robbery victim is "intimidat[ed]" within the meaning of § 2113(a) when she reasonably fears bodily harm from something other than violent physical force. Because intimidation entails a threat to use violent physical force, and not merely a threat to cause

35

bodily injury, Torres-Miguel does not alter our conclusion that § 2113(a) bank robbery is a crime of violence under the § 924(c)(3) force clause.

B.

In sum, we are satisfied that bank robbery under 18 U.S.C. § 2113(a) is a "crime of violence" within the meaning of the force clause of 18 U.S.C. § 924(c)(3), because it "has as an element the use, attempted use, or threatened use of physical force" — specifically, the taking or attempted taking of property "by force and violence, or by intimidation." Because bank robbery is a lesser-included offense of § 2113(d) armed bank robbery, armed bank robbery is also a crime of violence under the force clause. McNeal and Stoddard's challenge to their brandishing convictions therefore fails at the first step of plain error review, in that the trial court did not err in concluding that armed bank robbery qualifies as a crime of violence.

V.

Pursuant to the foregoing, we reject each of the contentions of error and affirm the judgments.

AFFIRMED

36