PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3485
_____

UNITED STATES OF AMERICA

v.

JEROME WILSON,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00049-001)
District Judge:  Hon. Anita B. Brody
_____

Argued
November 7, 2017

Before:  JORDAN, HARDIMAN, SCIRICA, Circuit Judges

(Filed: January 17, 2018)
_____

Eric A. Boden
Robert A. Zauzmer   [ARGUED]
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

*Counsel for Appellee*

Christy Martin   [ARGUED]
Rossman D. Thompson, Jr.
Federal Community Defender Officer
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA   19106

*Counsel for Appellant*

_____

OPINION OF THE COURT
_____


JORDAN, Circuit Judge

If it were somehow in doubt before, we take the opportunity now to hold that bank robbery by intimidation is categorically a "crime of violence" under the United States Sentencing Guidelines. In doing so, we join several other federal courts of appeals that have held the same under the guidelines or the Armed Career Criminal Act ("ACCA").

Jerome Wilson pled guilty to unarmed bank robbery in violation of 18 U.S.C. § 2113(a). The District Court imposed a prison sentence that was in part a result of the guidelines' career-offender enhancement, U.S.S.G. § 4B1.2, which, in Wilson's case, was applicable if bank robbery by intimidation counts as a crime of violence. The District Court correctly applied that enhancement, and it was not plain error that the Court also applied an enhancement for making a death threat. We will therefore affirm the sentencing order.

## I. BACKGROUND

The facts of the case are not in dispute. Wilson pled guilty to three counts of unarmed bank robbery or attempted bank robbery in violation of 18 U.S.C. § 2113(a), and the District Court sentenced him to 151 months' imprisonment, three years of supervised released, restitution of $3,122, and a special assessment of $300. The sentence was based in part on two enhancements: one for being a career offender, U.S.S.G. § 4B1.2, and the other for making a death threat, U.S.S.G. § 2B3.1(b)(2)(F). Of the three crimes, two were completed bank robberies by demand note and one was an attempted robbery by demand note. In one of the completed robberies, the note Wilson passed to the bank teller said, "this is a hold up, empty your drawers now, or else." (App. at 37.)

The presentence report ("PSR") suggested that § 2113(a) be treated as a "crime of violence" under the guidelines, and, because Wilson had two prior convictions under that same statute, that he be classified as a "career offender." If followed, those suggestions increased Wilson's total offense level from 27 to 32 and his criminal history category from IV to VI. The PSR credited Wilson with a 3-

3

level downward adjustment of his offense level for acceptance of responsibility, making his total suggested offense level 29. Ultimately, the threat-of-death enhancement did not increase the total offense level beyond that which was mandated by the career-offender enhancement; that is, even without the threat-of-death enhancement, Wilson's total offense level and criminal history category would have been the same.

At sentencing, Wilson did not raise any objections concerning the 2-level threat-of-death enhancement, but he did object to being treated as a "career offender" under the guidelines, arguing that § 2113(a) did not meet the guidelines' definition of a "crime of violence." The District Court overruled that objection and ultimately sentenced him to the bottom of the guidelines range calculated in the PSR.

## II. Discussion[1]

On appeal, Wilson challenges the District Court's application of the career-offender enhancement and the threat-of-death enhancement to his sentence. We conclude that the District Court correctly applied the career-offender enhancement because bank robbery by intimidation is categorically a crime of violence under § 4B1.2(a) of the guidelines. We further conclude that the District Court's application of the threat-of-death enhancement was not plain error.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**A.    Bank    Robbery by    Intimidation    is Categorically a Crime of Violence Under the Guidelines.**

Whether bank robbery by intimidation is a crime of violence is a strange but not new question. It is strange because to ask the question would seem to answer it – of course the threat of violence is inherent in bank robbery, and § 4B1.2(a)(1) of the guidelines specifically includes within the definition of a "crime of violence" "any offense under federal or state law ... that ... has as an element the ... threatened use of physical force against the person of another ... ." It is not a new question, though, because seven of our sister circuits have had to address this question and have concluded that bank robbery by intimidation does indeed qualify as a "crime of violence" under § 4B1.2(a)(1) or the nearly identically worded "elements" clause of the ACCA, 18 U.S.C. § 924(c)(3)(A).[2]  *See United States v. Hopkins*, 577

----

[2]  Like § 4B1.2(a), the ACCA is divided into an "elements" clause, which defines "crime of violence" broadly to include federal or state law offenses that involve the use or threatened use of force, and an "enumerated offenses" clause, which lists certain specific offenses that are to be considered crimes of violence. Robbery is among the enumerated offenses, but we have chosen to address the crime at issue here – 18 U.S.C. § 2113(a) – under the elements clause of § 4B1.2(a). Many courts of appeals have concluded that bank robbery under § 2113(a) is categorically a crime of violence. *See United States v. Harper*, 869 F.3d 624, 626-27 (8th Cir. 2017) (holding "bank robbery by intimidation under § 2113(a) is a crime of violence under ... [the guidelines],

F.3d 507, 511 (3d Cir. 2009) ("[Because] the definition of a 'violent felony' under the ACCA is sufficiently similar to the definition of a 'crime of violence' under the Sentencing Guidelines[,] ... authority interpreting one is generally applied to the other[.]" (footnote omitted)). Wilson argues that, because a defendant can be convicted of violating § 2113(a) without specifically intending to intimidate anyone, bank robbery cannot categorically be called a crime of violence. For the reasons that follow, that argument fails.

1. **The Categorical Approach Applies to Determine Whether Bank Robbery by Intimidation is a "Crime of Violence" Under the Guidelines.**

We exercise plenary review over a district court's decision that a conviction is one for a crime of violence, as defined by the guidelines, *United States v. Brown*, 765 F.3d

---

because it involves a threatened use of force"); *United States v. Ellison*, 866 F.3d 32, 39-40 (1st Cir. 2017) (same); *United States v. Campbell*, 865 F.3d 853, 854 (7th Cir. 2017) (same); *United States v. Brewer*, 848 F.3d 711, 716 (5th Cir. 2017) (same); *In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016) (holding "bank robbery conviction under § 2113(a) by force and violence or by intimidation qualifies as a crime of violence under the [ACCA] use-of-force clause"); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (concluding "[a] taking by intimidation under § 2113(a) ... involves the threat to use physical force" under the guidelines); *United States v. McNeal*, 818 F.3d 141, 157 (4th Cir. 2016) (holding "bank robbery under ... § 2113(a) is a 'crime of violence' within the meaning of ... [the ACCA]").

185, 188 (3d Cir. 2014), and we use the categorical approach to determine whether a conviction so qualifies, *United States v. Chapman*, 866 F.3d 129, 133 (3d Cir. 2017). That approach requires us to compare the elements of the statute under which the defendant was convicted to the guidelines' definition of "crime of violence." *Id.* at 133-34. A conviction under § 2113(a) can be a crime of violence only if "'the least of th[e] acts' criminalized" is sufficient to meet the guidelines' definition of a crime of violence. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (alteration in original) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)); *see also United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) (determining "the least culpable conduct hypothetically necessary to sustain a conviction under the statute" (citation omitted)).

Here, Wilson was convicted under the first paragraph of § 2113(a),[3] which states:

---

[3] The District Court determined that § 2113(a) was a divisible statute because it contained two paragraphs, each containing a separate version of the crime. *See Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013) (explaining that a statute is "divisible" when it "comprises multiple, alternative versions of the crime"). Having determined that § 2113(a) was divisible, the District Court applied the modified categorical approach to determine that Wilson was convicted under § 2113(a)'s first paragraph. *See id.* at 2283-84 (instructing courts to apply the "modified categorical approach" to divisible statutes). The parties do not dispute those rulings. Accordingly, we proceed straight to the categorical approach, which applies once a court has focused on the relevant statutory provision. *Id.* at 2285; *Brown*, 765

7

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... Shall be fined ... or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). The least culpable conduct covered by that statute is unarmed bank robbery by intimidation. *See United States v. Brewer*, 848 F.3d 711, 715 (5th Cir. 2017) (concluding that the least culpable conduct under § 2113(a) is "robbery by intimidation"). Thus, we must compare the elements of bank robbery by intimidation to the guidelines' definition of "crime of violence." *Chapman*, 866 F.3d at 133-34.

As noted earlier, *supra* n.2, guidelines § 4B1.2 defines "crime of violence" for purposes of the career-offender enhancement as:

> (a) ... any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

F.3d at 188-90. All references to "§ 2113(a)" throughout this opinion refer only to the first paragraph of § 2113(a).

8

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). We refer to § 4B1.2(a)(1) as the "elements," or "force," clause and to § 4B1.2(a)(2) as the "enumerated offenses" clause. To determine whether Wilson's conviction categorically qualifies as a "crime of violence" under the "elements" clause, we ask whether bank robbery by intimidation has as an element of the offense "the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1).

> **2.      Section 2113(a) Has as an Element of the Offense "The Use, Attempted Use, or Threatened Use of Physical Force."**

Unarmed bank robbery by intimidation clearly does involve the "threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). If a common sense understanding of the word "intimidation" were not enough to prove that,[4] our precedent establishes that

---

[4] The word "intimidate" is defined in the dictionary as "to make ... fearful" or "to compel or deter by or as if by

9

§ 2113(a)'s prohibition on taking the "property or money or any other thing of value" either "by force and violence, or by intimidation" has as an element the "threat of force." *United States v. Askari*, 140 F.3d 536, 541 (3d Cir. 1998) (en banc) (quotation marks and citation omitted), *vacated on other grounds*, 159 F.3d 774 (3d Cir. 1998); *see also id.* ("As used in § 2113(a), the term 'intimidation' means 'to make fearful or put into fear.'" (citation omitted)). Whether the theft of money from a bank involved intimidation is determined under an objective standard and from the victim's perspective, "*i.e.*, whether an ordinary person in the [bank] teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Id.* (quotation marks and citation omitted).

Each of our sister circuits to have addressed the issue has, not surprisingly, concluded that robbing a bank by intimidation does involve the "the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). Those courts also define § 2113(a)'s "intimidation" requirement in terms of a "threat of physical force," when interpreting the "elements" clause in the guidelines or the similarly worded "elements" clause of the ACCA.[5] Our conclusion is the same.[6]

---

threats," *Intimidate*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/intimidate (last visited Dec. 4, 2017).

[5] *See, e.g.*, *Harper*, 869 F.3d at 626 ("Intimidation means the threat of force."); *Ellison*, 866 F.3d at 37 ("[P]roving 'intimidation' under § 2113(a) requires proving that a threat of bodily harm was made."); *Campbell*, 865 F.3d at 856 ("[I]ntimidation in § 2113(a) means the threat of force."); *Brewer*, 848 F.3d at 715 ("The kind of 'intimidation'

that suffices to put a victim in fear of bodily injury during the course of a bank robbery, and which would in turn allow a defendant to complete such a robbery, is the very sort of threat of immediate, destructive, and violent force required to satisfy the 'crime of violence' definition."); *In re Sams*, 830 F.3d at 1239 (quoting and adopting reasoning from *United States v. McNeal*, 818 F.3d 141, that "[b]ank robbery under § 2113(a), 'by intimidation,' requires the threatened use of physical force"); *McBride*, 826 F.3d at 296 (defining intimidation as "conduct and words ... calculated to create the impression that any resistance or defiance ... would be met by force"); *McNeal*, 818 F.3d at 153 ("Bank robbery under § 2113(a), 'by intimidation,' requires the threatened use of physical force.").

[6] In his opening brief, Wilson argues that § 2113(a) encompasses conduct that does not meet the Supreme Court's definition of "physical force," *i.e.*, "*violent* force—that is, force capable of causing physical pain or injury to another person[,]" *Johnson*, 559 U.S. at 140, because one can be convicted under § 2113(a) for threatening to expose another to a hazardous substance. At oral argument, however, Wilson conceded that that position is untenable in light of our recent opinion in *United States v. Chapman*, 866 F.3d 129, which was published after Wilson filed his opening brief. Because *Chapman* forecloses that argument, we do not further address it here. *See id.* at 133 ("[T]he 'use' of 'physical force,' as used in § 4B1.2(a)(1), involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body.").

11

### 3.	Section 2113(a) Requires Knowing Conduct.

Wilson argues that § 2113(a) is not categorically a crime of violence because one can be convicted under that statute without intending to intimidate anyone. More particularly, his argument proceeds as follows. First, he says correctly that the "intimidation" element of § 2113(a) is measured by an objective standard from the victim's perspective, "*i.e.*, whether an ordinary person in the [bank] teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Askari*, 140 F.3d at 541 (quotation marks and citation omitted). Next, he contends that applying that standard criminalizes negligent behavior because a defendant may act in a way that causes an ordinary teller to reasonably infer a threat of harm, even though the defendant has no intent to cause such concern.[7] He says, "A defendant may be convicted, for example, even if he acts on the sincere belief that a teller will comply with a demand for money

---

[7] The proposition that a defendant can be convicted under § 2113(a) without intending to intimidate is not without support in the case law. *See United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) (explaining that a conviction pursuant to § 2113(a) does not require the defendant "intend for an act to be intimidating"); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (holding the intimidation element of § 2113(a) satisfied "if an ordinary person in [the teller's] position reasonably could infer a threat of bodily harm ... *whether or not* [the defendant] actually intended the intimidation" (first alteration and emphasis in original) (quotation marks and citation omitted)).

12

purely in reliance on bank policy, rather than out of fear." (Opening Br. at 12.)

To bolster his argument, he turns to *Elonis v. United States*, 135 S. Ct. 2001 (2015). In that case, the Supreme Court reversed a defendant's conviction for transmitting through interstate commerce threats to injure another person, in violation of 18 U.S.C. § 875(c). 135 S. Ct. at 2012. That statute contained no mens rea requirement. *See id.* at 2008 ("An individual who 'transmits in interstate or foreign commerce any communication containing any threat ... to injure the person of another' is guilty of a felony[.]" (quoting 18 U.S.C. § 875(c))). The defendant appealed and argued that the district court erred by refusing to instruct the jury that, to be guilty, he had to have "intended" his communication to be a threat. *Id.* at 2007. The district court had instead instructed the jury to convict if it found that the defendant "intentionally ma[de] a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by" the intended recipient as a serious threat. *Id.* The Supreme Court highlighted the "reasonable person" language in the jury instruction and concluded that using it had permitted a "negligence standard" to be imported into that criminal statute. *Id.* at 2011.

Wilson's attempt to extend *Elonis*'s reasoning to § 2113(a) is misguided. That case clarifies that courts should read a scienter requirement into statutes only to the extent necessary to prevent criminalizing otherwise innocent conduct. *Id.* The Supreme Court determined that § 875(c) required the government to prove a defendant intended his communication to be threatening because the only thing

13

separating innocent conduct from wrongful conduct under that statute was "the threatening nature of the communication." *Id.* In other words, the Court emphasized that "a defendant generally must know the facts that make his conduct fit the definition of the offense[.]" *Id.* at 2009 (quotation marks and citation omitted). Convicting a defendant solely on how a reasonable person perceived the relevant communication impermissibly risked creating criminal culpability for nothing more than a foolishly worded message. *Id.* at 2011. But, the *Elonis* Court's reasoning is inapposite here because, as recognized in *Elonis* itself, a statute criminalizing acts knowingly undertaken to deprive someone of property has, by virtue of that "knowing" element, a sufficient mens rea to avoid the risk of making lawful conduct unlawful. *Id.* at 2010 (citing *Carter v. United States*, 530 U.S. 255, 269 (2000)).

In *Carter v. United States*, the Supreme Court specifically held that "the presumption in favor of scienter demands only that we read subsection (a) [of § 2113] as requiring proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." 530 U.S. at 268. There was no reason to read a specific intent requirement into § 2113(a) because reading a general intent requirement into the statute was sufficient to "separate wrongful from otherwise innocent conduct." *Id.* at 269. *Carter* thus stands for the proposition that, because § 2113(a) is a statute requiring only general intent, it is enough for the government to prove that the defendant took knowing action to rob a bank.

14

Other courts of appeals have rejected the argument that § 2113(a) criminalizes negligent or reckless behavior. They have harmonized *Carter* with the "reasonable teller" standard inherent in § 2113(a)'s intimidation requirement by requiring the government to prove a defendant "knew that his actions were objectively intimidating." *McNeal*, 818 F.3d at 155.[8] In short, *Carter* and *Elonis* are not at odds. By reading a general intent requirement into § 2113(a), *Carter* requires the government to prove that the defendant acted with the knowledge that those actions would result in the taking of property by the use of force and violence or by intimidation. *Carter*, 530 U.S. at 268. Using an objective standard to apply § 2113(a)'s intimidation requirement does not trigger the concerns raised by *Elonis*, because, to be guilty, the defendant must have knowingly robbed or attempted to rob a bank – in other words, the defendant had to know he was taking money from a financial institution that was not simply giving it away. This fact exposes the nonsense in Wilson's claim that a teller might "comply with a [robber's] demand for money

---

[8] *See also Harper*, 869 F.3d at 626 (rejecting contention that *Elonis* created a new global definition of "threat" requiring the government prove the same mens rea in criminal statutes other than § 875(c)); *Ellison*, 866 F.3d at 39 (adopting the *McNeal* standard); *Campbell*, 865 F.3d at 856 ("Intimidation as an element of a bank robbery does not occur by negligent or accidental conduct. It is caused by an intentional threat of force."); *McBride*, 826 F.3d at 296 ("The defendant must at least know that his actions would create the impression in an ordinary person that resistance would be met by force. A taking by intimidation under § 2113(a) therefore involves the threat to use physical force.").

purely in reliance on bank policy[.]" (Opening Br. at 12.) By definition, § 2113(a) requires proof that a defendant knowingly engaged in an act that would cause an ordinary bank teller to be intimidated and turn over money that the defendant knew he had no right to have.[9]  Because a conviction under § 2113(a) requires the government to prove a defendant knowingly committed a bank robbery by force and violence or intimidation, it is quite obviously a crime of violence under guidelines § 4B1.2(a)(1).

---

[9] Wilson maintains that every circuit court has misread *Carter*.  As explained above, we do not agree with Wilson on that point.  Nevertheless, we briefly note three hypotheticals that Wilson poses for his contention that § 2113(a) can be violated by negligent or reckless behavior: (1) a defendant could rob a bank with no intent to intimidate based on a sincere belief that the bank teller would simply hand over money on demand based on a bank's policy to comply with all demands for money, regardless of the perceived seriousness of the threat; (2) a drug addict might submit a demand note to a teller without caring whether or not his note resulted in a teller handing over money; and (3) a bank robber with a physically imposing presence could instill fear in a bank teller without intending to intimidate.  In each of those examples, an individual is taking intentional action, *i.e.*, attempting to rob a bank.  Imposing an objective standard with relation to the intimidation element does not change that and does not turn § 2113(a) into a statute that criminalizes negligent behavior.  Accordingly, the least culpable way of violating § 2113(a)'s first paragraph will always constitute a "crime of violence."

16

We thus join our sister circuits in holding that bank robbery by intimidation, as set forth in § 2113(a), categorically qualifies as a crime of violence under § 4B1.2(a)'s "elements" clause.[10] Since bank robbery by intimidation is indeed a crime of violence, the District Court was correct to apply the career-offender enhancement.

---

[10] Because we conclude that bank robbery by intimidation is categorically a "crime of violence" under the "elements" clause, we do not analyze whether it also is a "crime of violence" under the "enumerated offenses" clause. U.S.S.G. § 4B1.2(a).

### B. Applying the Threat-of-Death Enhancement Was Not Plain Error.

Wilson has also complained on appeal that the District Court wrongly subjected him to a sentencing enhancement for making a death threat. He did not, however, register that objection before the District Court. "We review an unpreserved objection for plain error." *Dahl*, 833 F.3d at 349. A plain error has occurred when there is "(1) [an] error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights." *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008). "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if ... the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted). In the context of sentencing, a defendant establishes that an error affected his substantial rights by showing that the sentence imposed "was affected, in the sense that it likely would have been different but for the error." *United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001).

Here, Wilson cannot establish that the District Court committed plain error by applying the threat-of-death enhancement because that enhancement did not affect his sentence. Assuming that Wilson could establish that application of the enhancement constituted an obvious error, he still cannot show that the error affected his substantial rights because the District Court correctly applied the career-offender enhancement, and the threat-of-death enhancement did not increase his sentence beyond the sentence mandated

18

by the career-offender enhancement.[11]  Thus, Wilson has not shown plain error.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the sentence imposed by the District Court.

---

[11] Once the career-offender enhancement is triggered, the offense level determined by that guideline applies if it "is greater than the offense level otherwise applicable[.]" U.S.S.G. § 4B1.1(b).  The offense level mandated by the career-offender enhancement of § 4B1.1(b)(3) is 32, which is greater than 27, the "offense level otherwise applicable" with the threat-of-death enhancement.  Accordingly, the threat-of-death enhancement would only increase Wilson's sentence if we were to hold the career-offender enhancement inapplicable.  Because we hold that the career-offender enhancement applies, any error (if there were any) in applying the threat-of-death enhancement did not affect the sentence Wilson received.

19