NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2128
_____

UNITED STATES OF AMERICA

v.

ABDOULAYE DIALLO,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00017-001)
District Judge:  Hon. Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2018

Before:   JORDAN, BIBAS, and SCIRICA, *Circuit Judges*

(Filed April 30, 2018)
_____

OPINION*
_____

---

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Abdoulaye Diallo appeals the judgment of conviction and sentence imposed by the United States District Court for the Eastern District of Pennsylvania, and his counsel moves to withdraw pursuant to *Anders v. California,* 386 U.S. 738 (1967). For the reasons that follow, we will affirm the District Court's judgment and sentence and will grant the motion to withdraw.

## I.    BACKGROUND

A superseding indictment charged Diallo with six counts of fraud and aiding and abetting fraud concerning the Supplemental Nutritional Assistance Program ("SNAP"), in violation of 7 U.S.C. § 2024(b) and 18 U.S.C. § 2, six counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit those offenses, in violation of 18 U.S.C. § 371.

Diallo owned Brothers Food Market in Philadelphia, Pennsylvania. He enrolled his store in SNAP, which is sometimes called the food stamp program and is a federally funded means to provide assistance to low-income individuals and families so that they can purchase food. He participated in the program from September 10, 2011, to February 4, 2015. As part of the application process, Diallo received training on how the program works, acknowledged in writing that he understood and agreed that he could not "[t]rad[e] cash for food stamp benefits[,]" (App. at 600), and acknowledged in writing that "[he was] the person responsible for any action taking place in [his] store," (App. at 603).

At trial, the government presented substantial evidence of its undercover investigation, which revealed a two-person scheme of fraudulent SNAP transactions at Brothers Food Market. On six different days, undercover agents obtained cash rather than food in exchange for SNAP benefits at the store. On each occasion, the agents received in cash approximately half the value of SNAP benefits charged to the government.

In addition to that evidence, Diallo's co-conspirator, Lassana Nianghane, testified for the government about the scheme he and Diallo used to trade SNAP benefits at a discount for cash. Nianghane testified that he was a street vendor who sold purses. When a customer would ask to exchange SNAP benefits for cash, Nianghane would take the customer's SNAP electronic benefits transfer card ("EBT card") and corresponding personal identification number ("PIN"), then he would call Diallo so that Diallo could charge the card. Because the information was being relayed to Diallo by phone, he did not have use of the EBT card to charge the SNAP account, so the fraudulent transactions were regularly processed by Diallo manually. Nianghane would give the customer cash in an amount that was about half the amount of the EBT charge, that discount being "the law of the street." (App. at 286.)

Nianghane testified that he and Diallo would split the resulting profit, with Diallo taking 60% and Nianghane getting 40%. He also corroborated each of the six transactions with the undercover investigators and testified that, while he was out of the country for most of June 2013 and November 2014, no one took his place in the scheme

3

with Diallo.  Records from the United States Customs and Border Protection confirmed Nianghane's travel outside the United States during those months.

The government also presented electronic records of the SNAP transactions that occurred at Brothers Food Market between September 2011 and December 2015.  A summary of the records showed that a high percentage of the dollar volume from SNAP transactions were processed manually and that there was a drop in the number of manual transactions in the months when Nianghane was out of the country.  Diallo offered no evidence, and the jury convicted him on all counts.

At sentencing, Diallo did not object to the presentence investigation report ("PSR"), and the Court adopted the PSR's method of calculating the fraud loss by estimating the dollar volume of SNAP transactions that were manually entered and connected to Nianghane.  Based on evidence admitted at trial, the average monthly manual dollar volume when the scheme was active was $26,705.86.  The average monthly manual dollar volume when the scheme was inactive was $765.82.  The difference between those averages was $25,940.03 and represented the average monthly dollar volume due to the fraud.  The scheme was active for forty-one months.[1]  The PSR calculated the government's loss from the scheme by multiplying the average monthly

_____

[1]  The scheme was active from September 2011 through March 2015, but not when Nianghane was out of the country in June 2013 and November 2014, which is a total of forty-one months.

4

dollar volume due to the fraud by the number of months that the scheme was active, resulting in a total of $1,063,541.23.[2]

After considering the traditional sentencing factors, the District Court imposed a sentence of forty-two months of imprisonment, three years of supervised release, a special assessment of $1300, and restitution of $1,063,541. Diallo timely appealed, and the Court appointed new counsel for him on appeal.

## II. DISCUSSION[3]

As allowed by *Anders*, a criminal defendant's counsel may seek to withdraw from representing the defendant on appeal if there are no nonfrivolous issues to address. 386 U.S. at 744. When *Anders* is invoked, first, we determine whether counsel has "adequately fulfilled" the requirements of our Local Appellate Rule 109.2(a),[4] and, second, we examine "whether an independent review of the record presents any

---

[2] The PSR incorrectly transposed the digits in tenths and hundredths places, thereby overstating the total fraud loss amount by eleven cents, but that *de minimis* mistake was eliminated because the Court based its sentence and restitution on a loss amount rounded down to the nearest whole dollar, that is, $1,063,541.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[4] The Third Circuit Local Appellate Rule 109.2(a) states:

Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to Anders v. California, 386 U.S. 738 (1967), which must be served upon the appellant and the United States. The United States must file a brief in response. Appellant may also file a brief in response pro se. After all briefs have been filed, the clerk will refer the case to a merits panel. If the panel agrees that the appeal is without merit, it will grant counsel's Anders motion, and dispose of the appeal without

nonfrivolous issues." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). Whether

an issue is frivolous is informed by the standard of review for each potential claim raised.

*See United States v. Schuh*, 289 F.3d 968, 974-76 (7th Cir. 2002) (concluding issue on

appeal would be frivolous when reviewed for plain error).

At the first step of our review of an *Anders* brief, we consider whether counsel has

satisfactorily established that he or she "has thoroughly examined the record in search of

appealable issues" and "explain[ed] why [those] issues are frivolous." *Youla*, 241 F.3d at

300. Although "[c]ounsel need not raise and reject every possible claim[,] ... at a

minimum, he or she must meet the 'conscientious examination' standard set forth in

*Anders*." *Id.* (citation omitted). If the *Anders* brief appears adequate on its face, then, at

the second step of our review, we will "confine our scrutiny to those portions of the

record identified by ... [the] *Anders* brief" and "those issues raised in Appellant's *pro se*

brief." *Id.* at 301. Regardless of the adequacy of the *Anders* brief, we may affirm the

conviction and sentence without appointing new counsel, if we find that "the appeal is

patently frivolous." *United States v. Coleman*, 575 F.3d 316, 321 (3d Cir. 2009).

 **A. Counsel's *Anders* Brief Is Adequate, And Our Independent Review Reveals No Nonfrivolous Issues.**

---

appointing new counsel. If the panel finds arguable merit to the appeal, or that the Anders brief is inadequate to assist the court in its review, it will appoint substitute counsel, order supplemental briefing and restore the case to the calendar. The panel will also determine whether to continue the appointment of current counsel or to direct the clerk to discharge current counsel and appoint new counsel.

The first step of our review reveals that counsel's *Anders* brief contains an adequate examination of the record and of issues that arguably might support an appeal. Counsel represents that he has reviewed Diallo's case and concluded that it lacks any nonfrivolous issue because of the following: all of Diallo's objections at trial were sustained; there were no issues of plain error under Federal Rule of Criminal Procedure 52; the District Court did not abuse its discretion when it sustained one government objection at trial; there were no unresolved defense objections to the PSR; the District Court considered the sentencing factors as set forth in 18 U.S.C. § 3553(a); the sentence was calculated correctly; and the evidence at trial against Diallo was substantial, including thoroughly corroborated testimony from Diallo's co-conspirator. We are satisfied that counsel has correctly assessed the record.

Because counsel's *Anders* brief is adequate, at the second step of our inquiry, we only review the portions of the record identified in the *Anders* and *pro se* briefs. Our examination of the record relating to the issues raised by counsel reveals no nonfrivolous arguments. We therefore limit further inquiry to the issues in Diallo's *pro se* brief.

**B.    Diallo's *Pro Se* Brief Does Not Raise Any Nonfrivolous Arguments.**

In his *pro se* brief, Diallo raises three issues. First, he argues that the government's evidence at trial was insufficient to prove that he knew about the alleged fraudulent SNAP transactions. Second, he says that the government's pre-indictment delay in prosecuting prejudiced him for purposes of sentencing. And third, he argues that the Court's calculation of the loss amount for purposes of sentencing was flawed. We review each of those for plain error because he failed to lodge any objection to them at

7

the District Court.[5]  *See United States v. Wilson*, 880 F.3d 80, 88 (3d Cir. 2018) ("We review an unpreserved objection for plain error." (citation omitted)); *United States v. Hart*, 273 F.3d 363, 375 (3d Cir. 2001) (applying plain error review to defendant's contention, for first time on appeal, that the district court should have used a different method for calculating loss amount).  All of Diallo's claims are frivolous.

### 1.    The Government's Evidence At Trial Was Sufficient To Prove That Diallo Knew About Fraudulent SNAP Transactions.

Diallo contends that "the Government failed to produce sufficient evidence to support a finding, beyond a reasonable doubt, that he knew ... that the SNAP transactions ... were illegal transactions[.]" (*Pro Se* Br. at 11.)  That claim cannot survive plain error review.

"[I]n reviewing a sufficiency-of-the-evidence claim, we must examine the totality of the evidence, both direct and circumstantial." *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008) (internal quotation marks and citation omitted).  "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high[,]" and "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *United States v. Iglesias*, 535 F.3d 150, 155-56 (3d Cir. 2008).  In making our determination, we "interpret the evidence in the light most

---

[5]  "A plain error has occurred when there is (1) [an] error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights." *United States v. Wilson*, 880 F.3d 80, 88 (3d Cir. 2018) (alteration in original) (internal quotation marks and citation omitted).  "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if ... the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alterations in original) (citation omitted).

favorable to the government ... and do not weigh evidence or determine the credibility of witnesses[.]" *Miller*, 527 F.3d at 60 (internal quotation marks and citations omitted). "[W]e must uphold a jury's verdict if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

Here, the evidence at trial was more than sufficient for a jury to find that Diallo knew of fraudulent SNAP transactions occurring at his store.[6] The government presented evidence that investigators determined fraudulent SNAP transactions occurred at Diallo's store, that Diallo acknowledged in writing that he was responsible for all SNAP transactions at his store, and that Diallo further acknowledged in writing that SNAP benefits could not be traded for cash. Then there was Nianghane's testimony on Diallo's involvement in the scheme to exchange SNAP benefits for cash. That testimony alone may have been sufficient to convict. *See United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006) (concluding jury had reasonable evidence to convict grocery store owner of wire fraud and food stamp fraud based on testimonial evidence that owner was exchanging cash for customers' benefits). But it was not alone; it was corroborated by evidence from the undercover officers and the evidence of dramatic variation in fraud activity when Nianghane was not available to assist Diallo in the scheme. Because the evidence at trial was far more than sufficient to support the jury's finding that Diallo

---

[6] It is unclear which counts Diallo challenges as having insufficient evidence of his knowledge. Nevertheless, the evidence at trial was sufficient to support the jury's finding of Diallo's knowledge of all alleged illegal conduct and, therefore, his guilt beyond a reasonable doubt on all counts.

knew of fraudulent SNAP transactions occurring at his store, his claim to the contrary is frivolous.

### 2. The Government Did Not Delay Its Prosecution of Diallo, And Diallo Was Not Prejudiced.

Diallo next raises a claim of prejudicial pre-indictment delay in violation of his due process rights.[7] He argues that the government delayed its indictment to charge him with a large amount of loss, "which substantially prejudiced him for sentenc[ing] purposes." (*Pro Se* Br. at 21-22.) That claim also fails on plain error review.

To establish a claim of pre-indictment delay under the Due Process clause, a defendant must show "that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him" and "that the delay between the crime and the federal indictment actually prejudiced his defense[.]" *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000). "The Due Process Clause does not require prosecutors to file charges as soon as probable cause exists, or even ... [when] the government's investigation, though incomplete, has assembled sufficient evidence to prove guilt beyond a reasonable doubt." *Id.* at 151. "The mere possibility of prejudice inherent in any extended delay," such as unavailable witnesses or lost evidence, is not enough to demonstrate actual prejudice. *United States v. Ismaili*, 828 F.2d 153, 168 (3d Cir. 1987).

---

[7] Diallo also claims that pre-indictment delay violated his Sixth Amendment rights, but such a claim is not cognizable under the Sixth Amendment. *See United States v. Marion*, 404 U.S. 307, 313 (1971) ("[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the appellees were indicted[.]").

10

Here, Diallo has not shown that the government deliberately delayed its indictment to gain an improper tactical advantage or to harass him. The investigation included undercover exchanges of SNAP benefits for cash on several dates between September 10, 2011, and February 4, 2015. The agents used different tactics on different days in their investigative efforts to obtain more evidence. The government was under no obligation to indict Diallo as soon as its evidence was sufficient to show probable cause or guilt beyond a reasonable doubt.

Moreover, Diallo has not claimed that the alleged delay caused him to lose access to any evidence, that it made witnesses unavailable, or that it resulted in faded memories. He complains that, because the investigation extended over more than three years, the government caused him to be liable for a larger loss amount. That is an odd way to view where the responsibility for mounting losses lies. The loss amount was due to Diallo's choice to continue stealing from the government, not from the government's efforts to gather more evidence before prosecuting him. There was no prejudicial pre-indictment delay, and the claim that there was is also frivolous.

### 3. The Court's Calculation Of The Loss Amount Was Not Unreasonable.

Finally, Diallo disagrees with the Court's method for calculating the loss amount for purposes of sentencing. The loss amount can be calculated as "the amount of money the victim has actually lost," *United States v. Yeaman*, 194 F.3d 442, 456 (3d Cir. 1999) (citation omitted), and it must be proved by a preponderance of the evidence, *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007). "The court need only make a reasonable

11

estimate of the loss" and "the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1, cmt. n.3(C).

Here, the loss amount in the PSR was a reasonable estimate of the actual loss to the government resulting from Diallo's scheme to exchange SNAP benefits for cash. Diallo's scheme defrauded the government out of the full value of the SNAP benefits because SNAP recipients did not receive any food. Thus, the amount of SNAP benefits that Diallo received from fraudulent transactions is a reasonable assessment of the loss to the government.

The calculation method was reasonable because it relied on evidence that was admitted at trial, was limited to manual transactions at the Brothers Food Market, excluded a reasonable estimate of legitimate manual transactions, and was confined to the period when the fraud scheme was active. Diallo contends that the District Court should have used a different method that would have used accounting data from his store and those from comparable stores. But just because there may have been other methods to calculate the loss amount does not mean that the Court's chosen method was unreasonable. Thus, because the loss calculation was plainly reasonable, that claim also is frivolous.

## III.  CONCLUSION

For the foregoing reasons, we will grant counsel's motion to withdraw and affirm the District Court's judgment of conviction and sentence.

12