**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2804
_____

UNITED STATES OF AMERICA

v.

LIZA ROBLES,
Appellant

_____

_____

No. 20-1371
_____

UNITED STATES OF AMERICA

v.

ROBERTO TORNER,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Nos. 3-17-cr-00343-002 & 3-17-cr-00343-001)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 8, 2021
_____

Before:  CHAGARES, SCIRICA, and COWEN, Circuit Judges

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

A jury convicted Liza Robles and Roberto Torner of various offenses including conspiracies to distribute narcotics and illegally possess firearms. Robles now appeals her judgment of conviction, arguing that the District Court should have severed her narcotics charges from her firearms charges and her trial from Torner's. Torner appeals his judgment of conviction and sentence, arguing that the District Court erred by denying his motions to suppress evidence seized from his properties, making prejudicial evidentiary rulings at trial, and concluding that a prior state conviction for aggravated assault was a crime of violence for sentencing enhancement purposes. For the following reasons, we will affirm the District Court's judgments.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Liza Robles and Roberto Torner are a couple who own several properties in Pennsylvania. In 2015, local law enforcement began investigating Torner, who had been identified as a heroin dealer by a confidential informant (the "CI"). At the direction of law enforcement, the CI met with Robles and Torner during one week in June to buy

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

heroin. These meetings took place at two properties owned by Torner, on Washington Street and Center Street. After receiving payment from the CI, Torner directed co-defendant David Alzugaray-Lugones to provide the CI with heroin at the Center Street property.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") also investigated firearms possession by the defendants. The ATF determined that Robles owned at least three firearms at the time of the heroin deal, even though law enforcement had previously seized firearms from her to prevent their use by Torner, a convicted felon. On August 28, 2017, the ATF executed search warrants on the Washington and Center Street properties and seized many firearms, including a handgun in a dresser containing Torner's clothing.

On November 7, 2017, a grand jury returned an indictment charging Robles, Torner, and Alzugaray-Lugones with distributing and conspiring to distribute heroin. The indictment also charged Robles and Torner with a firearms conspiracy, Robles with one count of knowingly transferring firearms to a convicted felon, and Torner with one count of knowingly possessing firearms as a convicted felon. Torner committed more offenses while on pretrial release. He directed a tenant named Joseph Elliss to hide C-4 explosives at a property on Buck Mountain Road, which Torner owned but at which Alzugaray-Lugones had resided immediately prior to his incarceration. According to Elliss, Torner planned to report the C-4 to law enforcement and claim it belonged to Alzugaray-Lugones. Torner later instructed another tenant named Donald Warren to retrieve the C-4, but Warren could not find it. On January 5, 2018, law enforcement

executed a search warrant at the Buck Mountain property and seized the C-4. On January 30, the grand jury returned a superseding indictment adding two charges against Torner: one for possessing stolen explosives, and one for possessing explosives as a felon.

Torner moved to suppress the evidence from the Washington and Center Street properties, alleging that the search warrants lacked probable cause. The District Court disagreed and denied the motion. Torner also moved to suppress the C-4, claiming that law enforcement searched the Buck Mountain property before a magistrate judge issued the search warrant. The court denied that motion too, finding Torner's claim incorrect. The court also denied motions by Robles to sever her narcotics charges from her firearms charges and her trial from her co-defendants', reasoning that the superseding indictment sufficiently alleged a connection between the offenses and that the jury could compartmentalize the evidence against each defendant.

All three defendants proceeded to trial. Robles testified that the seized firearms belonged to her, including the one in the dresser with Torner's clothing. The Government introduced a photograph of the dresser's contents, which included a shirt that Torner also happened to be wearing at trial that day. Torner flushed the shirt he was wearing down the toilet in his holding cell shortly after the photograph was admitted into evidence. The District Court admitted video footage reflecting that Torner removed his shirt by the holding cell's toilet, over Torner's objection. Donald Warren testified that Torner possessed a second brick of C-4, and Torner objected when ATF agent Jamie Markovchick later cited an out-of-court assertion by Warren to the same effect. The CI's handler Eugene Rafalli testified, over objection, that she had been a reliable informant in

4

other unrelated narcotics investigations, and the CI later testified. On October 31, 2018, a jury found Robles and Torner guilty of all counts charged against them.

On July 22, 2019, the District Court sentenced Robles to 36 months of imprisonment. On February 11, 2020, the court sentenced Torner to 270 months of imprisonment. When determining Torner's advisory range of imprisonment under the United States Sentencing Guidelines, the court held that a prior state conviction for aggravated assault was a "crime of violence" for sentencing enhancement purposes. Robles and Torner timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review de novo whether the joinder of charges and defendants was proper under Federal Rule of Criminal Procedure 8, and we review the denial of a motion for severance under Federal Rule of Criminal Procedure 14 for abuse of discretion. United States v. Walker, 657 F.3d 160, 168, 170 (3d Cir. 2011). When reviewing an order on motions to suppress evidence, we review the underlying findings of fact for clear error and the District Court's application of the law to those facts de novo. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). Evidentiary rulings at trial are generally reviewed for abuse of discretion. United States v. Bailey, 840 F.3d 99, 117 (3d Cir. 2016). And we review de novo whether a prior conviction constitutes a crime of violence under the Sentencing Guidelines. United States v. Wilson, 880 F.3d 80, 83 (3d Cir. 2018).

III.

We consider the issues on appeal in turn, beginning with Robles's arguments that the joinder of her charges and her trial with Torner's was improper and prejudicial. We then address Torner's appeal of the denial of his suppression motions, the District Court's evidentiary rulings, and the classification of his prior conviction as a crime of violence.

A.

Robles argues that the charges and defendants in the superseding indictment were improperly joined, and that the District Court abused its discretion when it refused to sever them. She claims that the firearms and narcotics conspiracies lacked a common nexus, and that neither set of charges shared a nexus with Torner's explosives charges. Robles adds that severance would have spared her the prejudicial effect of being tried alongside Torner.

We disagree. In determining whether joinder of charges and defendants is proper under Federal Rule of Criminal Procedure 8, we focus primarily upon the indictment. See United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003). The superseding indictment connected Robles's narcotics and firearms charges by specifically alleging that she possessed firearms while distributing controlled substances. Even if Robles's firearms conspiracy spanned a longer period of time than her narcotics conspiracy, we have long noted that narcotics and firearms charges are properly joined when they are connected temporally or logically. See United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987). The joinder of defendants was also appropriate because the superseding indictment charged Torner with participating in the same narcotics and firearms

6

conspiracies.  United States v. Thornton, 1 F.3d 149, 152–53 (3d Cir. 1993).  And because Torner committed the explosives offenses while on pretrial release in order to limit the negative consequences of conviction on the narcotics and firearms charges, trying the explosives offenses alongside the others charged in the superseding indictment properly served the ends of judicial economy.  Cf. Walker, 657 F.3d at 169–70 (noting that escape charges may be properly joined with narcotics and firearms charges where the escaping defendant sought to evade prosecution for the underlying offenses).

The District Court did not abuse its discretion by denying Robles's severance motions under Federal Rule of Criminal Procedure 14, either.  Rule 14 provides for the severance of otherwise properly joined charges and defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).  A defendant is not entitled to severance simply because the evidence against her is less than that against another.  Instead, the grant or denial of severance turns on "whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility."  Walker, 657 F.3d at 170.  We have observed that a jury can do so where, as here, a trial involves only three defendants, no overly technical or scientific information, and relatively straightforward facts.  See United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005).  Though Torner's explosives offenses appeared more serious than the charges against Robles, the jury could readily distinguish between the circumstances of offenses that Robles and Torner committed prior to arrest and those that

7

Torner committed alone while on pretrial release. See, e.g., United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005) ("We see no reason why, in a joint trial of defendants charged with participating in a conspiracy, the fact that the grand jury charged one defendant separately with an additional criminal act somehow would interfere with the petite jury's ability to consider the evidence against each defendant on each count separately."). And we presume that juries can compartmentalize evidence when a court instructs them to consider the evidence against each defendant on each charge separately, as the District Court repeatedly did here. Id. at 205–06. Finally, Robles was not entitled to a separate trial based on the bare assertion that Torner could offer exculpatory testimony on her behalf. See Davis, 397 F.3d at 182–83. Accordingly, we will affirm the District Court's judgment as to Robles.

B.

Torner argues that the search warrants for the Washington and Center Street properties lacked probable cause. He claims that the allegations regarding narcotics and firearms in the supporting affidavit were stale, as law enforcement could not reasonably expect to find narcotics in 2017 based solely on evidence of one heroin deal in 2015. Torner adds that the search of the Buck Mountain property was illegal; although a magistrate judge issued a search warrant at 11:42 a.m., ATF agent Markovchick indicated that the search took place at 11:00 a.m. in his report of the search and return on the warrant.

The District Court did not err by denying Torner's motions to suppress. We pay great deference to a magistrate judge's initial determination of probable cause. See

Illinois v. Gates, 462 U.S. 213, 236 (1983).  Accordingly, we must simply decide whether the magistrate judge had a substantial basis for concluding that probable cause existed. United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997).  The probable cause determination considers the totality of the circumstances, including "the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences."  United States v. Yusuf, 461 F.3d 374, 390 (3d Cir. 2006).  While courts must consider the age of the information set forth by the investigating officer, age alone does not determine staleness.  Williams, 124 F.3d at 420. "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched."  Id. (quotation marks omitted).

As the District Court recognized, the Magistrate Judge had a substantial basis to conclude that there was probable cause to search the Washington and Center Street properties.  The supporting affidavit for the warrant application cited evidence that Torner had brandished a firearm at the Washington Street property and sold heroin at both properties in 2015.  The affidavit also indicated that Torner continued to discuss drug dealing in 2016 and wielded firearms as recently as 2017, and Torner still owned both properties at the time of the search.  Since drug trafficking conspiracies are often linked with firearm possession and may be protracted and continuous in nature, the Magistrate Judge reasonably concluded that the Washington and Center Street properties likely contained drugs and firearms.  See United States v. Tehfe, 722 F.2d 1114, 1119 (3d

9

Cir. 1983).

Torner's challenge to the search of the Buck Mountain property turns entirely on a dispute of fact that the District Court resolved following a full evidentiary hearing. The District Court unequivocally concluded that Markovchick's entries in his return on the warrant and report of the search were ministerial errors, and that law enforcement searched the Buck Mountain property only after the warrant issued at 11:42 a.m. Having reviewed the record on appeal, we see no basis to conclude that the District Court's finding of fact was clearly erroneous.

C.

Next, Torner claims prejudice from three errors at trial. First, he asserts that the Government improperly vouched for the CI's credibility by allowing her handler, Eugene Raffali, to testify that he had found her reliable in other unrelated investigations. Second, Torner argues that the District Court allowed hearsay testimony by Markovchick, who testified that Donald Warren told him there was an additional C-4 explosive besides that recovered from the Buck Mountain property. Finally, Torner claims that the court abused its discretion by admitting the video of Torner in his holding cell, which allegedly prejudiced the jury.

The District Court did not abuse its discretion in any of these instances. Raffali's testimony does not amount to improper prosecutorial vouching, which requires that "the prosecutor . . . assure the jury that the testimony of a Government witness is credible . . . based on either the prosecutor's personal knowledge, or other information not contained in the record." United States v. Vitillo, 490 F.3d 314, 327 (3d Cir. 2007) (quotation

10

marks omitted). The testimony here was a matter of record subject to cross-examination by Torner's counsel, not an allusion to the prosecutor's personal knowledge. The record reflects that Raffali testified to the CI's involvement in prior investigations to explain why she ultimately was not prosecuted for her past offenses, rather than to bolster the credibility of a witness who had not yet testified.

Second, Markovchick's testimony that Donald Warren believed there was more C-4 was not hearsay because it was not offered for the truth of the matter asserted. Federal Rule of Evidence 801 defines hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing . . . [and] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The declarant, Warren, expressed his belief that there was extra C-4 while testifying earlier at trial. And the record reflects that Markovchick cited Warren's belief to explain why his investigative materials did not focus on a firearm that Torner gave to Warren, as he was instead focused on whether there was additional C-4 to secure first. Under these circumstances, we have little reason to conclude that the Government offered Markovchick's testimony to prove the truth of a matter already asserted earlier at trial. See United States v. Price, 458 F.3d 202, 211 (3d Cir. 2006).

Finally, the District Court did not abuse its discretion by concluding that the video evidence was not substantially more prejudicial than probative under Federal Rule of Evidence 403. "When a district court conducts an on-the-record weighing of probative value against unfair prejudice, its evidentiary decision is entitled to great deference. . . . In order to justify reversal, a district court's analysis and resulting conclusion must be

11

arbitrary or irrational." United States v. Lacerda, 958 F.3d 196, 223 (3d Cir. 2020) (quotation marks and citation omitted). The court noted that the jury only briefly saw Torner in custody and clearly understood that he was subject to some degree of restraint as a criminal defendant on trial. The court also reasoned that a privacy screen obscured any view of the holding cell's toilet, and that Torner's destruction of his shirt was probative of consciousness of guilt. Given the court's reasoned justifications for admitting the video under these unusual circumstances, we cannot consider its decision arbitrary or irrational.

D.

Torner finally asserts that the District Court erred by treating a prior aggravated assault conviction as a crime of violence for sentencing enhancement purposes, as the Government did not establish that he was convicted of a purposeful or knowing (rather than reckless) violation of the relevant statute. See N.J. Stat. Ann. § 2C:12-1(b)(1) (providing that a person is guilty of aggravated assault if the person "attempts to cause serious bodily injury to another, or causes injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury"). The Government responds that the District Court properly relied on charging and plea documents that revealed Torner was convicted of purposeful and knowing conduct, which would undisputedly make his conviction a crime of violence.

We agree with the Government. In relevant part, the Sentencing Guidelines define a crime of violence as "any offense under . . . state law . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."

U.S.S.G. § 4B1.2(a)(1). Courts use either the categorical or modified categorical approach to determine whether a prior conviction is a crime of violence. United States v. Ramos, 892 F.3d 599, 606 (3d Cir. 2018). In the context of § 4B1.2(a)(1), both approaches require reviewing the language of the statute of conviction to determine whether it categorically has as an element the use, attempted use, or threatened use of physical force against another person. Id. at 605–06. The parties do not dispute that a purposeful or knowing violation of the statute at issue meets this standard.

The parties agree that the modified categorical approach applies here, and that the District Court could thus review charging documents and plea materials to determine which statutory language formed the basis of Torner's conviction. See Johnson v. United States, 559 U.S. 133, 144 (2010). The state indictment and plea form collectively indicate that Torner pled guilty to "purposely or knowingly" causing or attempting to cause serious bodily injury to another person. Accordingly, the District Court properly concluded that Torner's aggravated assault conviction was a crime of violence for sentencing purposes.

IV.

For the foregoing reasons, we will affirm the judgments of the District Court.